EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FLORENTINO COLÓN MEJÍAS, acusado y apelante.

*Número:* CR-68-42      *Resuelto:* 14 de abril de 1970

E. *Armstrong de Watlington, Enrique Miranda Merced* y *Julio García Antique*, abogados del apelante; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante fue acusado y convicto de escalamiento en primer grado. El juicio se le celebró el 1ro. de febrero de 1966. Fue sentenciado a cumplir de cuatro a ocho años de presidio. Sostiene que le perjudicó el que se admitiera en evidencia unas manifestaciones que hizo al perjudicado mientras se encontraba en el cuartel de la policía.

La prueba del Pueblo se basó en los testimonios del perjudicado Luis E. Soto y el policía José R. Ramírez. El primero declaró que el 20 de marzo de 1965, a eso de las siete de la mañana, fueron a buscarlo dos policías. Se dirigió con ellos a su negocio. Encontró la puerta del frente forzada y la cerradura tirada en el piso. En el interior encontró las cosas regadas y una vela apagada. En ese momento no notó que faltara algo. Explicó que había cerrado su negocio la noche anterior a eso de las nueve o diez.

Después de examinar el local del negocio se dirigió con los policías al cuartel y allí le mostraron una caja de dulces que había sido ocupada al apelante. El perjudicado fue llevado por la policía a una habitación en el mismo cuartel donde estaba el apelante. Del récord surge lo siguiente:

"P. Sr. Don Luis, una vez usted llegó al Cuartel dice que tuvo oportunidad de hablar con el acusado?

R. Sí, señor.

P. ¿Sobre qué usted habló con él?

R. Lo primero que le pregunté, le dije tenías que ser tú el que hiciera esto, porque él me había dicho que cuando entraba y se demoraba allí una hora o dos, que era por que el. . . .

.    .    .    .    .    .    .    .

P. ¿Lo obligó usted a él a que aceptara que había penetrado en su negocio?

R. No, señor.

P. ¿Fue él de su voluntad?

R. Él de su voluntad fue que me dijo cuando le dije, por una porquería de unos centavos, entonces me dijo 'lo siento, pero así son las cosas'." (T.E. págs. 15–17.)

En el contrainterrogatorio a que fue sometido el perjudicado salió a relucir que mientras estuvo con el acusado en el cuarto en el cuartel, por un período de alrededor de veinte minutos, entraron y salieron a la habitación constantemente, dos policías.

El apelante fue sentado a declarar ante el juez, en la determinación de voluntariedad de las alegadas manifestaciones incriminatorias hechas al perjudicado. Declaró a preguntas de la defensa, que al ser llevado al cuartel el 20 de marzo fue golpeado y que antes de llegar el perjudicado él ya había hecho una declaración a la policía. (T.E. págs. 32–33.) Admitió que el 7 de julio siguiente firmó una declaración jurada ante los fiscales y explica que "la acepté por que esa misma declaración estaba en el cuartel, yo le había dado esa a él." Esta declaración escrita no fue presentada en evidencia.

Luego de oír la prueba el juez de instancia determinó que la admisión hecha por el acusado al perjudicado era voluntaria y por tanto admisible en evidencia. Expresó:

"Hon. Juez: . . . El Tribunal no le da crédito a la declaración del perjudicado, en el sentido de lo que él declaró, sino en lo que aquí se dice sobre la voluntariedad . . . . Aquí lo único que yo admito es la declaración que le hizo el acusado a este señor Luis E. Soto, que es persona particular, que eso no comprende la investigación oficial en estos casos. Entiende el Tri-

bunal que no opera el requisito de que habla la defensa, es persona particular, para que no declare, tampoco las advertencias en el sentido de que tenga derecho a asistencia de abogado, ya que no se trataba de una investigación oficial, sino de una conversación con una persona particular . . . ." (T.E. págs. 43–44.)

Para la fecha en que se celebró el juicio, el 1ro. de febrero de 1966, estaban disponibles para el acusado las normas establecidas en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), donde expresamos a la pág. 779: "En las circunstancias anteriormente señaladas, o sea cuando la investigación toma el cariz de acusatoria y se posa sobre un sospechoso en particular con miras a sacarle una confesión, indica el caso de *Escobedo* que el proceso adversativo cobra realidad. De que sea ya adversativo surge la obligación de la policía u otra autoridad competente de advertirle de su derecho constitucional a permanecer en silencio y no incriminarse, y de su derecho constitucional a tener allí y entonces asistencia de abogado y el permitirle que la tenga."

No podemos sustraernos del cuadro de hechos de este caso, y analizarlo en abstracto como si se tratase de unas meras admisiones hechas por el apelante a una persona particular y fundamentar su admisión en evidencia, a base de que la doctrina de *Rivera Escuté* cesa de amparar a un acusado si la confesión es hecha a una persona particular y no a un agente del estado. El apelante es detenido por la policía cerca del establecimiento del señor Soto, el cual la policía había encontrado con la puerta violentada. Lo encuentran agachado con una caja de dulces en las manos. Lo llevan al cuartel a eso de las tres de la mañana y allí lo encierran en un cuarto hasta las ocho de la mañana, en que llega el perjudicado a identificar los objetos robados. Durante esas cinco horas que estuvo detenido en el cuartel, el acusado fue interrogado por la policía sin que se le hicieran ningún tipo de advertencia de sus derechos constitucionales. Según vimos anterior-

mente, el apelante aceptó haber confesado en el cuartel de la policía en presencia de los policías Martínez y Zapata, antes de que el perjudicado fuera llevado al cuartel. A preguntas del fiscal declaró el apelante, que luego de la confesión a los dos oficiales fue llevado a fiscalía. En otra ocasión que es llevado a la fiscalía firmó la confesión. Sin embargo esta confesión firmada no se presentó en evidencia. No aparece del récord que antes de tomar dicha confesión se le hicieran las advertencias exigidas por *Rivera Escuté*.

No puede circunscribirse la controversia de este caso a determinar si la norma de *Rivera Escuté* v. *Delgado*, supra, aplica o no a confesiones hechas a personas privadas. El apelante ha estado en una etapa crítica de su procesamiento bajo la custodia e influencia de la policía. No se le hace ninguna clase de advertencia en relación con sus derechos constitucionales. Presta una declaración a la policía y ésta no es presentada en evidencia. Llevan al perjudicado al cuartel a identificar los objetos robados. Lo llevan al cuartito donde tienen al acusado. Por espacio de veinte minutos habla con el acusado y alegadamente éste le admite los hechos. Esta admisión sí fue presentada en evidencia. No puede obviarse por el Estado la norma de *Rivera Escuté* utilizando o haciendo intervenir a una persona particular en el interrogatorio del acusado.

Habiendo ya confesado, sin que antes se le hubieran hecho las advertencias que requiere el debido procedimiento, lo expresado al perjudicado en el mismo cuartel, adolece del mismo defecto constitucional que haría inadmisible la primera confesión. No puede descartarse la presencia de la policía y el hecho de que el apelante se encontraba en el cuartel. La segunda es necesariamente consecuencia de la primera. ¿Qué más le daba al acusado admitírselo al perjudicado habiendo ya mediado una confesión a la policía? Ya el gato es-

taba fuera del saco. (¹) Y como antes de hacer la primera no se le advirtió de su derecho a guardar silencio y a estar asistido de abogado, la segunda está permeada de los mismos defectos de la primera. Usando la ya clásica expresión de la jurisprudencia americana: es el fruto del árbol venenoso (*fruit of the poisonous tree*), aplicada originalmente en casos de registro y luego extendida a casos de confesiones. *Developments Confessions*, 79 Harv. L. Rev. 935, 1024 (1966). La alegada admisión incriminatoria no es otra cosa que la extensión de la declaración que comenzara a darle a la policía el acusado, resultante de un interrogatorio iniciado por la policía al llevarlo arrestado al cuartel. No podemos escindir tajantemente los dos interrogatorios y aplicarle a uno unas normas y al otro no, cuando ambos forman parte del todo de un proceso acusatorio iniciado ya por la policía contra el acusado dentro del cuartel. Pretender usar uno y no el otro, sería abrir una brecha a las normas de *Rivera Escuté* que prácticamente las anularían. Sería muy fácil para las autoridades obviar estas normas haciendo intervenir en alguna etapa de la investigación a una persona particular y tratar de lograr una confesión o admisión incriminatoria libre

---

(¹)El Juez Jackson en el caso de *United States* v. *Bayer*, 331 U.S. 532, 540 (1947) usó esta metáfora que ha tenido general aceptación en la jurisdicción americana para explicar esta situación. Así lo expresó:

"Por supuesto, una vez que un acusado deja salir el gato del saco confesando, sin importar qué lo indujo, de ahí en adelante nunca quedará libre de las desventajas sicológicas y prácticas de haber confesado. El nunca más podrá meter de nuevo el gato en el saco. El secreto está afuera para siempre. En tal sentido, una confesión posterior puede ser siempre tenida como fruto de la primera."

En *Bayer* se admitió la segunda confesión evidentemente por la razón de que fue hecha seis meses después de la primera. Pero véanse *Beecher* v. *Alabama*, 389 U.S. 35, 36 y el escolio 2 (1967) y *Harrison* v. *United States*, 392 U.S. 219 (1968). Y el Juez Harlan en su opinión concurrente en parte y disidente en parte en el caso de *Darwin* v. *Connecticut*, 391 U.S. 346, 350 (1968) expresó: "La razón principal por la cual un sospechoso puede prestar una segunda y una tercera confesión es simplemente que, él puede pensar que tiene poco que perder con la repetición."

de los requisitos constitucionales previos a su obtención. *Cf. Pueblo* v. *Laguna Rodríguez,* 92 D.P.R. 831 (1965).

El Procurador General acepta que la alegada admisión del apelante ocurre en una etapa crítica de la investigación, cuando ya el apelante era considerado sospechoso, pero que la misma no surge de la intervención de un agente del orden ni de un representante del ministerio público y sí de un particular, el perjudicado. Alega que los comentarios hechos por el perjudicado y la contestación por el apelante surgen espontáneamente. Cita en apoyo de su contención la posición asumida por varios tribunales federales y cortes estatales en cuanto a que las doctrinas de los casos de *Escobedo* v. *Illinois,* 378 U.S. 478 (1964) y *Miranda* v. *Arizona,* 384 U.S. 436 (1966), sólo se aplican a interrogatorios llevados a cabo por oficiales del orden público, cuando el declarante está bajo custodia policíaca.

En los casos citados por el Procurador, *State* v. *O'Kelly,* 150 N.W.2d 117 (1967); *Schaumberg* v. *State,* 432 P.2d 500 (1967); *People* v. *Frank,* 275 N.Y.S.2d 570 (1966); *People* v. *Santiago,* 278 N.Y.S.2d 260 (1967), el acusado no estaba bajo arresto en el cuartel ni se había iniciado y conducido un interrogatorio por la policía. En todos estos casos los acusados prestaron sus declaraciones y confesiones con anterioridad a intervención alguna de parte de la policía. En el caso de autos el acusado había sido interrogado por la policía por espacio de cinco horas antes de surgir la alegada admisión al perjudicado y había confesado a la policía, sin que del récord surja que se le hiciera ningún tipo de advertencia en relación con sus derechos constitucionales.

Otros dos casos citados, *Evans* v. *United States,* 377 F.2d 535 (5th Cir. 1967) y *Yates* v. *United States,* 384 F.2d 586 (5th Cir. 1967) tampoco son de aplicación. En el primero se le hicieron las advertencias de rigor antes de iniciar el interrogatorio a la acusada y en el segundo las manifestaciones en controversia fueron hechas mientras el acusado con un

revólver al cinto, haciéndose pasar por un oficial del Ejército, hablaba con dos empleados del hotel desarmados y antes de intervenir y llegar al sitio de los hechos los agentes del Negociado Federal de Investigaciones.

*Por lo anteriormente expresado se revocará la sentencia apelada y se devolverá el caso para la celebración de nuevo juicio.*

El Juez Presidente Señor Negrón Fernández no intervino.