EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ ROVIRA RAMOS, acusado y apelante.

Número: CR-83-16      Resuelto: 15 de enero de 1986

*Carlos R. Noriega,* abogado del apelante; *Raúl Barrera Morales, Procurador General Interino, Carmen A. Bravo de Riefkohl, Procuradora General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

El apelante fue convicto por infringir los Arts. 6, 8 y 10 de la Ley de Armas. Basa su recurso ante nos en que se admitiera prueba de que portaba una pistola cargada y un silenciador, y que los llevó a templar a una armería. La prueba consistió en el testimonio de un agente de aduanas que tras recibir una confidencia telefónica, se personó en la armería, a cuyas facilidades tenía acceso por ser cliente de la misma, y así pudo ver cuando el apelante entregó al armero una bolsa que según su apreciación contenía un arma, y aprovechando que el armero no estaba, pudo luego examinar y fotografiar el contenido de la bolsa y comprobar que había la pistola con peine de balas y un silenciador.

Hubo otra prueba, consistente en el testimonio del armero y el del dueño de la armería, que corrobora la versión del agente.

Plantea además el apelante que no tuvo un juicio justo porque se vió privado de declarar a su favor debido a que advino mentalmente incapacitado.

Hemos examinado los planteamientos del apelante y concluimos que no se cometieron los errores que señala y que se discuten ampliamente en las opiniones concurrentes emitidas en este caso. En virtud de lo cual, se confirman las sentencias apeladas.

El Juez Presidente Señor Pons concurre en el resultado, sin opinión. El Juez Asociado Señor Irizarry Yunqué emitió opinión concurrente a la que se unen los Jueces Asociados Señores Negrón García y Ortiz. El Juez Asociado Señor Rebollo López emitió opinión concurrente a la que se unen la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General Interino.

(*Fdo.*) Heriberto Pérez Ruiz
*Secretario General Interino*

—O—

Opinión concurrente del Juez Asociado Señor Irizarry Yunqué a la que se unen los Jueces Asociados Señores Negrón García y Ortiz.

El apelante fue convicto ante tribunal de derecho por infracción de los Arts. 6, 8 y 10 de la Ley de Armas. Sus planteamientos ante nos se dirigen a impugnar la admisibilidad de prueba testifical y fotografías producidas por un agente de aduanas federal, testigo principal de las acusaciones. Se alega que las actuaciones de dicho agente constituyeron un registro ilegal e irrazonable. Se impugna, además, que el tribunal de instancia resolviera que el apelante era "mentalmente competente" durante el proceso. No le asiste la razón y por eso concurrimos en que deben confirmarse las sentencias apeladas.

I

La prueba dejó establecidos los hechos que pasamos a resumir. El Sr. Roberto H. Abreu era agente de aduanas para el 15 de septiembre de 1979. Ese día fue informado, mediante una llamada telefónica anónima, que a las 5:00 de la tarde se presentaría en la armería Joe's Gun Shop una persona de

nombre José que llevaría un arma con un silenciador con el propósito de templarla (*rebluing*). Se le describió al tal José como de cabello estilo afro, barba y bigote.

Aunque los casos son asignados por el jefe de su división, el señor Abreu decidió investigar la confidencia y se personó a la armería a las 4:45 de la tarde. Él acostumbraba practicar el tiro al blanco allí y conocía al dueño y al armero. A las 5:10 entró el apelante, llevando una bolsa bajo el brazo. Estaba acompañado de una joven. Saludó al armero, hablaron, y puso la bolsa sobre la mesa del armero. Al así hacerlo se produjo un sonido metálico. Abreu pudo observar un objeto cilíndrico que sobresalía, y percibió la forma —*right angle object*— de un objeto que le llevó a concluir, por sus conocimientos sobre armas, que se trataba de un arma de fuego.

Decidió esperar y se entretuvo tirando al blanco en el polígono de la armería hasta que el apelante se hubo retirado. Entonces, aprovechando que el armero cuadraba la caja y que no había nadie en el taller, entró a dicho sitio, tomó la bolsa del mostrador en que había sido colocada, la abrió y comprobó que contenía una pistola Beretta calibre .38 cargada con un peine de balas y un silenciador. Volvió a colocar dichos objetos donde estaban. Al otro día regresó con una cámara fotográfica Polaroid, que desarrolla al instante, y nuevamente aprovechó un momento en que estuvo solo en el taller, tomó los objetos de donde estaban, y los fotografió.

Excepto tratar de averiguar si el arma había sido hurtada y notar en otra visita a la armería que ya los mencionados objetos no estaban allí, lo que corroboró en parte una confidencia de que habían sido devueltos al apelante, nada hizo el referido agente de aduanas hasta que recibió otra confidencia de que el arma sería utilizada para "matar a un chota". Esto ocurrió en febrero de 1980, cuando relató a su jefe lo acaecido. No se procesó al apelante en el tribunal federal.

En marzo relató lo sucedido a un agente de la Policía de Puerto Rico. En abril de 1980 prestó declaración jurada ante

un fiscal y se halló causa probable contra el apelante y se le arrestó por infringir los Arts. 6, 8 y 10 de la Ley de Armas. (¹)

En el juicio que se le celebró, el testimonio del agente Abreu fue corroborado por el armero, quien declaró bajo inmunidad concedídale por el fiscal. De otra parte, el dueño de la armería declaró, que conocía a Abreu hacía tres años, sabía que es agente de aduanas, y le había autorizado a entrar a su negocio para limpiar un arma cuando quisiera. Dijo además que sabía que Abreu conducía una investigación sobre un arma traída a su armería, y requirió de éste una carta de su Departamento y del Bureau of Tobacco, Alcohol and Firearms, que le fue cursada oportunamente por un agente de nombre Rafael Rivera en que se le comunicaba que el Bureau le autorizaba a reparar una pistola Beretta calibre .38 que no aparecía oficialmente inscrita, con el propósito de adelantar una investigación. Esta carta fue admitida como prueba de defensa.

## II

Luego de celebrado el juicio y después de recaído el fallo condenatorio, planteó la defensa que el apelante advino incapacitado mentalmente durante el proceso y que ello le impidió declarar en su favor. Solicitó que no se dictara sentencia.

Señalada audiencia para investigar sobre este aspecto la defensa produjo los testimonios de dos psiquiatras. El primero, Dr. Jesús M. Nieves, relató que trató al apelante en marzo de 1981 cuando fue llevado a la sala de emergencia en

---

(¹) El Art. 6 contempla como delito menos grave el poseer un arma de fuego sin licencia para ello. El Art. 8 dispone que cometerá delito grave la persona que porte un arma de fuego cargada o con municiones sin tener licencia para ello. El Art. 10 prohíbe el poseer, vender, prestar, ofrecer, entregar o disponer de cualquier dispositivo, artefacto o accesorio que silencie o reduzca el ruido del disparo de cualquier arma de fuego, a menos que se trate de la Policía de Puerto Rico, Guardia Nacional o de las Fuerzas Armadas de Estados Unidos. Cometerá delito grave la persona que quebrante dicha disposición.

el Hospital de Psiquiatría en Hato Rey. Dijo que se mostraba incoherente, confuso, ilógico, hostil y agresivo. Le administró un tranquilizante pero no mostró mejoría. Diagnosticó un padecimiento de esquizofrenia paranoide. El paciente fue internado y tratado por otro médico.

El Dr. Julio E. Frank declaró haber tratado al apelante desde el 1978, habiendo diagnosticado su caso como esquizofrenia no diferenciada. Dijo que el paciente tuvo alucinaciones, oía voces que lo llamaban y se creía mensajero de Dios, y que expresó que era culpable ante los tribunales de justicia pero inocente ante Dios. Leyó del récord de admisión los apuntes de la enfermera en que consignó que el paciente estaba orientado, alerta en tiempo, lugar y espacio; sabía quién era y dónde estaba; no estaba hostil o agresivo, y seguía instrucciones. Declaró además el doctor Frank que el paciente sufrió varios brotes sicóticos y no fue hasta el 29 de agosto de 1981 que se mostró alerta, comunicativo y orientado, y estaba en condiciones de ser procesado.

La defensa llamó a declarar, además, al policía Pedro J. Maysonet quien el 19 de mayo de 1981 recibió una querella de unos vecinos de Santurce que alegaban que un individuo había penetrado en una residencia. Al llegar al lugar, dos personas señalaron al apelante, que se encontraba dos casas más abajo. Procedió a acercársele y le formuló varias preguntas, pero se negó a hablar. Procedió a llevarlo al Cuartel de la Policía. No mostró violencia o resistencia alguna a la intervención policíaca. Se mostró tranquilo. En el cuartel contestó todas la preguntas que le hizo el fiscal Flores. Fue conducido ante un magistrado que le hizo las advertencias de ley. Rovira aceptó haber penetrado en propiedad ajena y haber ocasionado daños a la propiedad. Luego se disculpó con los dueños de la residencia. Fue ingresado en la Cárcel Regional de Bayamón.

El Lcdo. Francisco López Romo también declaró por la defensa. En síntesis, declaró que fue el abogado de Rovira

desde 1974 hasta los comienzos del proceso en el presente caso, cuando renunció a su representación legal. Recuerda que mientras el agente Abreu prestaba testimonio durante el juicio, el apelante comenzó a llorar y se lanzó al piso. Lo notó totalmente desconectado de la realidad. Al terminar el contrainterrogatorio de Abreu, Rovira se le acercó y lo abrazó. También le manifestó que lo quería mucho y trató de besarlo. Le dijo que era culpable ante la ley y los hombres, pero inocente ante Dios. A pesar de observar esta conducta en Rovira, nunca informó al tribunal que este aparente estado de locura le impedía sentarlo a declarar a su favor.

Por su parte, el Ministerio Público presentó al Dr. Guillermo Santiago, psiquiatra, que a solicitud del fiscal entrevistó a Rovira para determinar si estaba procesable. El 6 de julio de 1981 le practicó un examen mental y determinó que estaba lúcido, coherente y bien orientado. No mostró signos de desorientación y contestaba sus preguntas de forma lógica. Hasta le manifestó que deseaba continuar sus estudios. El doctor Santiago estima que el llanto de Rovira se debió a que veía amenazada su libertad ante la posibilidad de ser hallado culpable y que se le impusiera una sentencia de muchos años. Ante tal castigo, Rovira se deprimió. Declaró que encontró que era procesable, o sea, en condiciones de expresarse y defenderse en juicio.

Por último, durante la vista en que se dilucidó la competencia mental del apelante, éste tuvo otro ataque de llanto. Ese mismo día por la tarde, fue traída a declarar la enfermera que lo atendió, la Sra. Carmen L. Tirado. Ésta recibió a Rovira en una sala de emergencias que hay en el Centro Judicial de Hato Rey. Llegó llorando y gritando. Luego se arrodilló en el piso y continuó llorando unos diez (10) minutos. Le dio agua de azahar y se calmó. Hace cinco (5) años que trabaja como enfermera y ha atendido a muchas personas en condiciones semejantes, entre ellas fiscales, visitantes y em-

pleados. No observó en el apelante ningún disturbio en especial.

## III

El apelante plantea el siguiente señalamiento de errores:

PRIMER ERROR: Erró el Tribunal de instancia al no decretar que la actuación de un agente federal de aduanas, al registrar y fotografiar el contenido de una bolsa que le fuera entregada al armero de una armería, para su reparación, sin que previamente hubiera obtenido el consentimiento del dueño del taller o hubiera obtenido una orden judicial al efecto[,] constituía un registro ilegal y/o irrazonable, violentándose de esa forma el debido proceso de ley.

SEGUNDO ERROR: Erró el Tribunal de instancia al admitir unas fotografías de una pistola y de un silenciador, y al no suprimir el testimonio de un agente federal de aduanas, a esos efectos, por ser ellos el producto de un registro ilegal sin orden, y por actuar dicho funcionario fuera del ámbito de su autoridad.

Al igual que lo hace el apelante en su alegato, consideramos estos planteamientos conjuntamente. Sostiene que un registro sin orden judicial previa, efectuado por un agente federal es ilegal, por tratarse de un delito castigado exclusivamente por la jurisdicción local, en violación de la garantía constitucional contra registros y allanamientos irrazonables. Cuestiona la autoridad del agente de aduanas para investigar casos locales por cuenta propia y a espaldas de la Policía de Puerto Rico. Argumenta que tenía una expectativa legítima de "privacidad" sobre el contenido de la bolsa y que el agente no poseía autorización alguna de éste o del dueño del establecimiento para realizar un registro de la misma.

El análisis del apelante es parco. No cita autoridad alguna que discuta la legalidad de las intervenciones de agentes federales en casos penales de la jurisdicción local. El Ministerio Público, por su parte, no discute si el agente federal actuó o no en su capacidad oficial al momento del registro. Sos-

tiene que debe considerársele un ciudadano particular que como tal tenía la autorización del dueño para entrar en su armería cuando quisiera y registrar si sospechaba que "algo malo" sucedía allí. Añade que Rovira entregó voluntariamente la pistola al armero sin una expectativa legítima de "privacidad".

El derecho de las personas contra registros y allanamientos irrazonables está garantizado por la Sec. 10 del Art. II de la Constitución de Puerto Rico y por la Enmienda IV de la Constitución de Estados Unidos. Esta garantía constitucional es una prohibición contra el Gobierno; nunca se da contra personas privadas. En *Burdeau* v. *McDowell*, 256 U.S. 465 (1921), se resolvió que el término Gobierno debe ser utilizado en su sentido amplio, que incluye a todos los agentes gubernamentales y no sólo a los oficiales encargados de poner en vigor las leyes. También se puede esgrimir en corte esta garantía constitucional contra personas privadas que son ordenadas o requeridas por el Gobierno para llevar a cabo investigaciones criminales.([2]) Bajo esta doctrina, no podemos acoger el planteamiento del Pueblo de que el agente Abreu actuó como ciudadano privado.

Para determinar que un agente gubernamental ha llevado a cabo un registro ilegal, debemos examinar primero si el imputado tenía en el lugar registrado una expectativa legítima de intimidad. El Tribunal Supremo de Estados Unidos resolvió en *Rawlings* v. *Kentucky*, 448 U.S. 98 (1980), y en *Rakas* v. *Illinois*, 439 U.S. 128 (1978), que deben considerarse los siguientes aspectos:

1. Si la persona que reclama la protección tenía derecho de excluir a la demás gente del lugar registrado.

2. Si el lugar registrado es uno donde una persona pru-

---

([2]) Aún más, la protección de la Cuarta Enmienda puede invocarse contra personas privadas que realizan registros con el propósito específico de obtener pruebas incriminatorias y así presentar una acusación formal en su contra ante los tribunales.

dente y razonable puede esperar que esté exenta de intrusión gubernamental.

3. Si la persona aunque no esté en posesión o control del lugar registrado tiene acceso legítimo a dicho lugar.

4. Si la persona ha tomado algunas medidas o precauciones para mantener su privacidad en el lugar registrado.

5. Si la persona razonablemente espera estar protegida en su intimidad en el lugar registrado.

¿Tiene alguna expectativa de protección a su intimidad la persona que lleva un arma a arreglar a una armería cuando no posee licencia expedida por el Estado para poseerla y portarla? Forzoso es concluir que no. Rovira no tenía derecho a excluir a las demás personas del taller de la armería. No tenía expectativa de intimidad alguna ya que el Gobierno, en el ejercicio de su facultad eminente de controlar el tráfico y uso de armas de fuego requiere por ley determinados informes y se reserva el derecho a examinar los trámites llevados a cabo por las armerías, señalando severas penas si se desobedeciere la reglamentación dispuesta para estos casos. (³)

Careciendo Rovira de expectativa de intimidad alguna, no hay registro ilegal. No obstante, las iniciativas tomadas por el agente federal Abreu pusieron en grave peligro la seguridad de los ciudadanos. Éste debió incautarse del arma y el silenciador de inmediato y notificar a las autoridades locales. Permitió que el arma le fuere devuelta a Rovira con las consecuencias nefastas que esto pudo haber tenido.

## IV

Pasemos a la consideración del tercer señalamiento de error. Está planteado de la siguiente manera:

TERCER ERROR: Erró el Tribunal de instancia al resolver que el acusado estuvo [*sic*] mentalmente competente durante todo el proceso, y al no anular los fallos rendidos.

---

(³) Véase el Art. 26 de la Ley de Armas, 25 L.P.R.A. sec. 436, particularmente sus incisos 5 y 8.

Básicamente argumenta el apelante que estuvo mentalmente incapacitado durante todo el juicio, y no fue hasta después de dictado el fallo que se descubrió su verdadera situación. Sostiene que es aplicable la norma de *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), donde se esgrimió como defensa la insanidad mental del acusado al momento de delinquir. Resolvimos en *Pueblo* v. *Alsina*, supra, que la presunción de cordura del procesado puede ser rebatida por la prueba presentada, recayendo sobre el Pueblo demostrar su sano juicio al igual que cualquier otro hecho. Corresponde al juzgador determinar si el fiscal ha probado la sanidad mental del reo y si tuviere duda razonable sobre ello, debe dar el beneficio de la duda al acusado.

Las versiones ofrecidas por el apelante confligen entre sí. Por una parte sostiene que su insanidad mental fue descubierta luego de encontrársele culpable, y por otra parte el abogado que le representó durante el juicio afirmó que a lo largo del juicio notó al acusado desconectado de la realidad y que simplemente no lo informó al tribunal. La Regla 240 de Procedimiento Criminal dispone que sólo cuando el tribunal tenga base razonable para creer que el acusado está mentalmente incapacitado, determinará en una vista su sanidad mental. Al no existir la base razonable a que se refiere esta regla, no procede anular el juicio.

Por otra parte, el tribunal actuó conforme a las Reglas 169 y 240 de Procedimiento Criminal y celebró una vista en que recibió prueba de ambas partes sobre el estado mental de Rovira. El juez acogió la opinión pericial presentada por el Pueblo y concluyó que Rovira exhibió un cuadro de angustia, pánico, depresión y no una enajenación total, por lo que determinó que era procesable. A pesar de que este Tribunal se encuentra en igual posición que el tribunal de instancia para evaluar la prueba pericial, y puede adoptar su propio cri-

terio,(⁴) no encontramos base alguna para variar dicha determinación.

## V

Por los fundamentos expresados, concurrimos en que las sentencias apeladas sean confirmadas.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López, a la cual se unen los Jueces Asociados Señora Naveira de Rodón y Señor Hernández Denton.

## I

En la opinión concurrente que emite el Juez Asociado Señor Irizarry Yunqué en el presente caso se concluye —*correctamente*— que el agente de aduanas federal actuó como un "agente del Gobierno" y no como un "ciudadano privado", por lo que, en principio, le es oponible la garantía constitucional contra registros y allanamientos irrazonables consagrada por la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico y por la Enmienda IV de la Constitución de Estados Unidos de América.

Se determina sin embargo —*incorrectamente, a nuestro entender*— que el apelante no tenía una "expectativa legítima de intimidad o privacidad" en el lugar "registrado" por dicho agente federal, por lo que se resuelve que el apelante no tenía "capacidad" (*standing*) para solicitar la "supresión" del arma de fuego en controversia.

Dicha conclusión está predicada en, y es consecuencia de, la norma establecida a esos efectos por el Tribunal Supremo de Estados Unidos en *Katz* v. *United States*, 389 U.S. 347 (1967); *Rakas* v. *Illinois*, 439 U.S. 128 (1978); *United States* v. *Salvucci*, 448 U.S. 83 (1980); *Rawlings* v. *Ken-*

---

(⁴)*Zambrana* v. *Hospital Santo Asilo de Damas*, 109 D.P.R. 517 (1980); *Alonso García* v. *Comisión Industrial*, 103 D.P.R. 712 (1975).

*tucky*, 448 U.S. 98 (1980); *United States* v. *Ross*, 456 U.S. 798 (1982); *Texas* v. *Brown*, 460 U.S. 730 (1983).

No debemos perder de vista, sin embargo, que en la jurisdicción federal se ha resuelto que la llamada "regla de exclusión" no goza por sí misma de rango constitucional, sino que es meramente una medida profiláctica de los derechos bajo la citada Cuarta Enmienda. Por ende, en esa jurisdicción la misma está sujeta a modificación o abolición. *Illinois* v. *Gates*, 462 U.S. 213, 223 (1983). En Puerto Rico, por el contrario, nuestra Constitución expresamente dispone, en lo pertinente, que la evidencia obtenida en violación de la citada Sec. 10 del Art. II *"será inadmisible* en los tribunales". (Énfasis suplido.) Esta diferencia en el "rango jurídico" de la regla de exclusión existente entre la jurisdicción federal y la nuestra hace, a nuestro entender, inaplicable la jurisprudencia federal que niega los efectos de la referida regla de exclusión en casos donde el acusado no puede alegar y probar una "expectativa de privacidad" en relación con el lugar registrado o allanado.

Como es sabido, la Enmienda Cuarta de la Constitución federal "describe el ámbito mínimo de la garantía que reconoce. Los estados no pueden achicar esas fronteras, pero pueden expandirlas". *Pueblo* v. *Dolce*, 105 D.P.R. 422, 427 (1976). En otras palabras, habiendo el Tribunal Supremo de Estados Unidos reconocido expresamente la facultad de los estados federados para expandir la garantía contra registros y allanamientos ilegales más allá de los límites de la citada Enmienda Cuarta, *Cooper* v. *California*, 386 U.S. 58, 62 (1967), este Tribunal, al interpretar la Constitución del Estado Libre Asociado de Puerto Rico, *puede ampliar* el ámbito de los derechos humanos de los residentes de nuestro país. *Pueblo* v. *Dolce*, ante, pág. 428.

En lo que respecta a la "capacidad" (*standing*) de un imputado de delito para solicitar la supresión del material delictivo en relación con el cual se le procesa, somos del criterio que bajo nuestro ordenamiento jurídico si un ciudadano es

acusado de la supuesta comisión de un delito público y la evidencia que se pretende utilizar para probar su culpabilidad fue el producto de un registro, a esa persona no se le debe negar la "capacidad" para cuestionar la legalidad del mismo. En otras palabras, si el Estado pretende relacionar a un acusado con determinado material delictivo y así privarlo de su libertad con motivo de ello, dicho ciudadano debe tener el *derecho automático* de cuestionar la legalidad de la forma o manera en que el Estado advino en posesión del referido material.

## II

No obstante lo anteriormente expresado, concurrimos con el resultado a que llega el Tribunal en la sentencia emitida [1] por cuanto existe prueba suficiente —independiente de aquella obtenida mediante la "actuación ilegal" del agente de aduanas [2]— que demuestra más allá de duda razonable la culpabilidad del apelante.

---

[1] Mediante la cual se confirman las sentencias apeladas.
[2] Consistente la misma en el testimonio del armero.