Opinión disidente emitida por
la Jueza Asociada Señora Fiol Matta,
a la que se une el Juez Presidente Señor Hernández Denton.
Contra la ilegalidad no hay que ga-rantizar nada. Lo ilegal es ilegal y no puede prevalecer en ningún sitio. —Antonio Reyes Delgado, delegado a la Convención Constituyente(1)
Hoy, por estar igualmente divido el Tribunal, se con-firma una Sentencia del Tribunal de Apelaciones que re-suelve que para solicitar la supresión de evidencia pro-ducto de un registro ilegal, una persona acusada de delito necesita legitimación activa basada en una expectativa ra-zonable de intimidad sobre el lugar registrado, interpre-tando así el término de ‘persona agraviada’ recogido en la Regla 234 de Procedimiento Criminal. Además, se con-firma la determinación de que, en este caso, los coacusados no lograron demostrar dicha legitimación pues no alberga-ban una expectativa razonable de intimidad sobre unas cuentas bancarias de sus corporaciones.
Disiento respetuosamente. En primer lugar, porque la doctrina de legitimación activa que se adopta, basada en el estándar de expectativa razonable de intimidad, es contra-ria a nuestro ordenamiento constitucional. En segundo lu-gar, porque la doctrina según adoptada no es acorde a la propia jurisprudencia federal de donde se importa y es in-suficiente en cuanto a nuestros estándares de intimidad. En tercer lugar, porque la aplicación de esa doctrina a los hechos de este caso exige un resultado distinto, pues los *462 coacusados lograron establecer que albergaban una expec-tativa razonable de intimidad sobre las mencionadas cuentas. Finalmente, porque se valida el empleo por parte del Estado de un esquema para esquivar los controles cons-titucionales a su poder coercitivo, generando un subterfu-gio intolerable que le permite beneficiarse de sus actos ilegales.
Por otra parte, concurro con que el Secretario de Hacienda cuenta con el poder estatutario para delegar en una persona que no es empleada regular de la agencia, me-diante contrato, la conducción de una investigación sobre evasión contributiva.
I
Producto de una investigación, dos comisiones de la Asamblea Legislativa refirieron a los departamentos de Justicia y Hacienda un informe para que investigaran po-sibles violaciones de ley por parte de los aquí peticionarios, Luis P. Costas Elena y Hazell A. Russell McMillan, casados entre sí, y sus corporaciones. Desde el inicio del proceso, los peticionarios fueron los blancos de la investigación.
Tras los referidos, el Departamento de Hacienda hizo requerimientos de información al Banco Bilbao Vizcaya Ar-gentaría (B.B.V.A.), entre otras entidades, sobre los núme-ros de las cuentas bancarias de los peticionarios. Posterior-mente, el Departamento presentó al Tribunal de Primera Instancia una petición ex parte solicitando órdenes de re-gistro a varias cuentas bancarias, unas pertenecientes a los peticionarios en su capacidad personal y otras a las entidades corporativas de las cuales eran únicos accionistas. A pesar de ser cuentas bancarias separadas, algunas a nombre personal del señor Costas Elena y la señora Russell McMillan, y otras a nombre de las corpora-ciones como personas jurídicas, del expediente surge que estas cuentas interactuaban entre sí de tal manera que *463 fondos de las corporaciones se depositaban en las cuentas personales de los coacusados y fondos de éstos se deposita-ban en las cuentas corporativas. Igualmente, se utilizaban las cuentas indistintamente para efectuar pagos; por ejem-plo, se usaba la cuenta corporativa para pagar gastos per-sonales del señor Costas Elena y la señora Russell McMillan.(2)
El foro de instancia emitió las órdenes solicitadas. De la información recopilada producto de esos registros, se pre-sentaron varias acusaciones criminales contra los peticio-narios Costas Elena y Russell McMillan, pero no así contra las corporaciones como personas jurídicas.(3) Tras presen-tarse las acusaciones, los peticionarios solicitaron que la evidencia obtenida producto de los registros mencionados fuera suprimida, al amparo de la Regla 234 de Procedi-miento Criminal.(4) El Tribunal de Primera Instancia de-claró con lugar la supresión de la evidencia obtenida de los registros realizados a las cuentas bancarias personales de los peticionarios, por entender que la información que sir-vió de base para dichos registros era insuficiente para constituir causa probable. Según surge del expediente, la solicitud ex parte de orden de registro contra las cuentas bancarias de los peticionarios se basó únicamente en la declaración escueta de una funcionaría del Departamento *464 de Hacienda que no establecía hechos específicos y se limi-taba a informar de la existencia de una investigación contra los peticionarios. Esta determinación del foro de ins-tancia advino final y firme, y no ha sido cuestionada por el Estado.
Por otro lado, el foro de instancia declaró sin lugar la supresión de la evidencia obtenida del registro de las cuen-tas corporativas de los peticionarios.(5) El Tribunal de Pri-mera Instancia razonó que los peticionarios carecían de legitimación activa para impugnar dicho registro, aun cuando el registro de sus cuentas bancarias personales era ilegal por ser producto de la misma orden judicial basada en la misma declaración insuficiente. El foro primario es-timó que la única legitimada para solicitar la supresión de la evidencia era la corporación, dado que el registro se hizo contra cuentas que le pertenecían. Como la corporación no figuraba como acusada en el caso, no había quien pudiese cuestionar la validez de este registro.(6) Por lo tanto, el Estado se benefició de su registro ilegal al no acusar a la única persona jurídica facultada para cuestionarlo y sí a las personas naturales que eran sus oficiales y accionistas.
Los peticionarios acudieron oportunamente al Tribunal de Apelaciones. Este sostuvo las determinaciones del Tribunal de Primera Instancia. El foro intermedio determinó *465 que los peticionarios carecían de legitimación activa para impugnar el registro ilegal de las cuentas bancarias corpo-rativas, pues la “persona agraviada” por ese registro fue la propia corporación. Dado que la corporación tiene una per-sonalidad jurídica separada e independiente de sus accio-nistas, oficiales y directores, y ante el hecho de que esta no fue acusada, los peticionarios necesitaban demostrar que tenían una expectativa legítima de intimidad sobre las cuentas bancarias corporativas. El Tribunal de Apelacio-nes entendió que los peticionarios no tenían dicha expectativa.
Inconformes aún, los peticionarios presentaron un re-curso de certiorari ante este Tribunal señalando la comi-sión de tres errores. En primer lugar, alegan que las cor-poraciones cuyas cuentas bancarias fueron registradas son, verdaderamente, un alter ego de los peticionarios. En segundo lugar, objetan el testimonio de la CPA Márquez Vázquez pues entienden que, como contratista privada, ca-recía de autoridad en ley para dirigir la investigación en su contra. En tercer lugar, alegan que se debe suprimir toda evidencia producto del registro ilegal contra las cuentas bancarias de las corporaciones. Los primeros dos errores no se cometieron. El tercero sí se cometió.
II
A. La Constitución de Estados Unidos y la Constitu-ción de Puerto Rico protegen al pueblo contra registros, allanamientos e incautaciones irrazonables por parte del Estado. En la Constitución federal, esta protección está re-cogida en la Cuarta Enmienda, que dispone como sigue:
No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias contra regis-tros, detenciones e incautaciones irrazonables, y no se expe-dirá ningún mandamiento sino con causa probable apoyada en juramento o afirmación, que describa particularmente el lugar *466 que ha de ser registrado y las personas o cosas que han de ser detenidas o incautadas.(7)
Por su parte, nuestra Constitución, en la Sección 10 del Artículo II, ordena así:
No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautacio-nes y allanamientos irrazonables.
No se interceptará la comunicación telefónica.
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello única-mente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a regis-trarse, y las personas a detenerse o las cosas a ocuparse.
Evidencia obtenida en violación de esta sección será inadmi-sible en los tribunales. (Énfasis suplido.)(8)
En cuanto a la protección generada por ambos textos constitucionales, hemos determinado que en todo caso que se impugne un registro, allanamiento o incautación por alegadamente ser ilegal o irrazonable, resolveremos al am-paro de nuestra propia Constitución, ya que las proteccio-nes otorgadas por la Constitución federal están incluidas en nuestra Ley Suprema.(9) Esto, pues la Cuarta En-mienda “describe el ámbito mínimo de la garantía que reconoce. Los estados no pueden achicar esas fronteras, pero pueden expandirlas”.(10) En efecto, tanto nuestra Constitución como la jurisprudencia interpretativa han ex-pandido esa protección contra la arbitrariedad guberna-mental.(11)
*467 La forma de la Sección 10 del Artículo II de la Constitu-ción de Puerto Rico es “análoga a la de la Enmienda Cuarta, pero el contenido es distinto. Ambas disposiciones respondieron a circunstancias diferentes y es natural que su interpretación se atenga, dentro del marco de nuestra relación con Estados Unidos, a las realidades cambiantes de una y otra sociedad”. (Énfasis suplido.)(12) La descrip-ción siguiente de la interacción entre el texto de estas dos disposiciones constitucionales hecha por el profesor Chiesa Aponte es iluminadora:
Los párrafos primero y tercero [de la Sección 10 del Artículo II de la Constitución de Puerto Rico] equivalen a la Enmienda Cuarta. El segundo párrafo no tiene equivalencia en la Cons-titución de los Estados Unidos. ... El cuarto y último párrafo de la sección 10 establece expresamente la famosa regla de exclusión de evidencia obtenida en violación a la protección constitucional, lo que también es de “factura más ancha”, pues la regla de exclusión es de creación jurisprudencial en la juris-dicción federal ..,.(13)
Puede apreciarse de lo anterior que nuestro texto cons-titucional no tan solo ofrece mayor protección contra regis-tros y allanamientos irrazonables, sino que expresamente ordena cuál será el destino de evidencia obtenida en viola-ción de dicha protección: la inadmisibilidad en los tribuna-les de Puerto Rico. Sin embargo, la diferencia entre la re-gla de exclusión en la jurisdicción federal y en la nuestra no estriba únicamente en que la primera es de creación jurisprudencial mientras que la segunda está plasmada expresamente en nuestro texto constitucional.(14) En nues-tro ordenamiento, la regla de exclusión es más abarcadora.
Como nos señala la profesora Resumil, la regla jurispru-dencial federal “no va dirigida contra los errores cometidos por los magistrados al expedir la orden sino exclusivamente *468 al uso arbitrario de la discreción policial”. (Énfasis suplido.)(15) Por lo tanto, se limita a ser una “disuasión pro-filáctica” contra violaciones hechas por agentes del orden público y no constituye un “derecho constitucional personal”.(16) Como veremos, ese no es el caso de Puerto Rico, en donde la elaboración estatutaria de la regla cons-titucional de exclusión, por vía de la Regla 234 de Procedi-miento Criminal, incluye supresiones de evidencia cuando los tribunales, en efecto, emiten órdenes contrarias a derecho. Es decir, nuestra regla de exclusión, a diferencia de la federal, no se limita únicamente a suprimir evidencia producto del uso arbitrario de la discreción policial.(17)
B. La interacción entre la Cuarta Enmienda y la Sec-ción 10 de nuestro Artículo II ha sido ampliamente discu-tida por este Tribunal. Incluso, en varias ocasiones, hemos sido críticos del desarrollo incongruente de la jurispruden-cia interpretativa del Tribunal Supremo federal sobre los alcances de la Cuarta Enmienda. En Pueblo v. Dolce seña-lamos que “[l]a garantía contra los registros y allanamien-tos irrazonables ha atravesado en el curso de su acciden-tada historia diversos períodos de contracción y ampliación. Como los ríos, se ensancha y se estrecha, se seca y se desborda y a veces cambia de rumbo. ... Lo cu-rioso es la fidelidad con que nuestra doctrina usualmente ha calcado en diversas fases las vueltas y revueltas de es-tas aguas en el derecho federal norteamericano”. (Cita omitida.)(18) Precisamente por esas “vueltas y revueltas”, *469 muchas jurisdicciones estatales han optado por desistir de imitar la jurisprudencia federal.(19) Puerto Rico no ha sido la excepción, particularmente en cuanto a la regla de ex-clusión sobre la cual, como expone la profesora Resumil, este Tribunal se ha “negado consistentemente a seguir la jurisprudencia federal como única fuente de inter-pretación”.(20)
Por su parte, la Regla 234 de Procedimiento Criminal atiende las mociones de supresión de evidencia producto de registros ilegales. Se trata de la tramitación estatutaria del mandato constitucional recogido en la Sección 10 del Artículo II. En lo pertinente, la regla dispone que
[l]a persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allana-miento o registro.
(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
(e) Que la orden de allanamiento fue librada o cumplimen-tada ilegalmente.
(f) Que es insuficiente cualquier declaración jurada que sir-vió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente. (Enfasis suplido.)(21)
*470 Esta regla se refiere a evidencia obtenida como resul-tado de un allanamiento o registro ilegal, y es el meca-nismo procesal para reclamar el derecho a la exclusión que la Constitución garantiza cuando la evidencia cuestionada ha sido obtenida en violación a la protección contra incau-taciones, registros y allanamientos irrazonables e ilegales.(22)
Como adelantáramos, esta regla no se limita única-mente a escenarios en donde ha habido conducta abusiva o arbitraria por parte de agentes del orden público, elemento principal tras la regla de exclusión federal. También atiende circunstancias en las que un tribunal incumple con las exigencias constitucionales mínimas, como exigir la de-mostración de causa probable o precisar con suficiente de-talle la orden emitida.
Ahora bien, la Regla 234 de Procedimiento Criminal es-tablece como elemento necesario para invocar sus efectos que quien presente una moción a su amparo sea una “persona agraviada” por el registro.(23) Esto, a pesar de que el mandato constitucional no incluye dicha exigencia, sino que menciona al pueblo como el receptor de la protección y ordena, de manera absoluta, la exclusión de la evidencia obtenida ilegalmente.(24) Sin embargo, nada en la Regla *471 234 nos requiere concluir que su protección se limite a una única persona agraviada; es decir, no hay legitimación ac-tiva exclusiva.
Según la Sentencia emitida hoy, quien único puede pre-sentar mociones al amparo de la Regla 234 es la persona que posea una expectativa legítima de intimidad sobre el lugar registrado. De esa forma, se traslada el requisito de expectativa legítima de intimidad, que se utiliza para de-terminar cuándo aplica la protección constitucional contra registros y allanamientos irrazonables, al concepto de legi-timación activa para presentar una moción al amparo de la Regla 234. Como veremos, esa conclusión no está acorde a nuestro texto e historia constitucional, pues es posible que una persona no necesariamente posea una expectativa ra-zonable de intimidad sobre un determinado lugar y aún así la evidencia se haya obtenido ilegalmente, lo que según nuestra Constitución supone su inadmisibilidad en los tribunales de Puerto Rico. Existe una marcada diferencia en-tre la expectativa razonable de intimidad en cuanto a la activación de la protección constitucional contra registros irrazonables y la legitimación activa requerida para retar una evidencia ilegalmente obtenida.
En la jurisdicción federal, donde no hay una regla de exclusión de carácter constitucional, se requiere demos-trar, como requisito inicial, que la persona tiene una “ex-pectativa legítima y razonable de intimidad” sobre el lugar o cosa objeto de la intervención impugnada.(25) En este caso, lo decisivo es que “sólo puede solicitar la supresión de evidencia —invocar la regla de exclusión— la persona que ha sufrido la violación constitucional, lo que depende, a su vez, del criterio rector de expectativa razonable de intimidad”.(26) La razón para esta interpretación limitada de la legitimación activa la encontramos, precisamente, en la naturaleza jurisprudencial del derecho federal y su ob- *472 jetivo limitado de ser disuasivo contra el abuso de los agen-tes del orden público. Por eso, la normativa federal ha ne-gado legitimación para reclamar la supresión de evidencia ilegalmente obtenida a quien no pueda demostrar una ex-pectativa legítima de intimidad. Como adelantáramos, nuestra Constitución exige algo distinto.
En Pueblo v. Rovira Ramos, 116 D.P.R. 945 (1986), nos enfrentamos directamente al asunto de la legitimación re-querida para solicitar la supresión de evidencia ilegal.(27) En aquel entonces, este Tribunal resolvió de forma uná-nime la controversia, pero se dividió en partes iguales en cuanto a los fundamentos y se emitieron dos opiniones concurrentes. La opinión concurrente del Juez Asociado Rebollo López —a la que se unieron la Jueza Asociada Na-veira de Rodón y el Juez Asociado Hernández Denton— es la posición que más se asemeja a nuestra realidad constitucional.(28) Nos dice la opinión concurrente:
Dicha conclusión [de que el apelante no tenía capacidad (standing) para solicitar la supresión] está predicada en, y es consecuencia de, la norma establecida a esos efectos por el Tribunal Supremo de los Estados Unidos .... No debemos per-
*473 der de vista, sin embargo, que en la jurisdicción federal se ha resuelto que la llamada “regla de exclusión” no goza por sí misma de rango constitucional, sino que es meramente una medida profiláctica de los derechos bajo la citada Cuarta Enmienda. Por ende, en esa jurisdicción la misma está sujeta a modificación o abolición. ... En Puerto Rico, por el contrario, nuestra Constitución expresamente dispone, en lo pertinente, que la evidencia obtenida en violación de la citada Sec. 10 del Art. II “será inadmisible en los tribunales”. Esta diferencia en el “rango jurídico” de la regla de exclusión existente entre la jurisdicción federal y la nuestra hace, a nuestro entender, inaplicable la jurisprudencia federal que niega los efectos de la referida regla de exclusión en casos donde el acusado no puede alegar y probar una “expectativa de privacidad” en relación con el lugar registrado o allanado. (Citas omitidas y énfasis en el original.)(29)
En lo que respecta a la “capacidad” (standing) de un impu-tado de delito para solicitar la supresión del material delictivo en relación con el cual se le procesa, somos del criterio que bajo nuestro ordenamiento jurídico si un ciudadano es acu-sado de la supuesta comisión de un delito público y la eviden-cia que se pretende utilizar para probar su culpabilidad fue el producto de un registro, a esa persona no se le debe negar la “capacidad” para cuestionar la legalidad del mismo. En otras palabras, si el Estado pretende relacionar a un acusado con determinado material delictivo y así privarlo de su libertad con motivo de ello, dicho ciudadano debe tener el derecho au-tomático de cuestionar la legalidad de la forma o manera en que el Estado advino en posesión del referido material. (Enfa-sis en el original.)(30)
El mandato constitucional es meridianamente claro: para impugnar un registro ilegal no hay otro criterio de legitimación que el ser una persona acusada de delito pú-blico contra quien se pretenda utilizar evidencia obtenida como resultado de ese registro. Si la impugnación no pros-pera porque no hay protección constitucional debido a que el acusado no tiene una expectativa legítima de intimidad sobre el lugar registrado o porque no hay otra causa de ilegalidad en el registro, la evidencia no será suprimida. *474 Pero ello es impertinente al asunto de legitimación, pues no se le puede negar a un ciudadano acusado de delito la oportunidad de impugnar un registro ilegal.
Esto es compatible con el diseño empleado por la Con-vención Constituyente al aprobar la Sección 10 del Artículo II. En su versión actual, dicha sección protege al pueblo contra registros, allanamientos e incautaciones irrazon-ables. Durante los trabajos de la Convención, se presentó una enmienda para añadir la palabra ilegal. Los delegados que argumentaron en contra hicieron alusión a que era innecesario: “[c]ontra la ilegalidad no hay que garantizar nada. ... Lo ilegal es ilegal y no puede prevalecer en ningún sitio. Yo creo que esa calificación es innecesaria”. (Enfasis suplido.)(31) Posteriormente, la Convención recibió el In-forme de la Comisión de Carta de Derechos, que disponía que “[p]ara dar garantía adicional y efectiva a estos dere-chos se declara inadmisible en los tribunales toda eviden-cia que haya sido obtenida por su violación”.(32)
Nótese que el mandato constitucional no condiciona la regla de exclusión a elemento alguno. Es un mandato contundente. De igual forma, es revelador el debate entre los delegados constituyentes que consideraron que era in-necesario añadir urna prohibición contra registros ilegales porque ello sería redundante. No obstante, el resultado al que se llega hoy permite que se utilice evidencia producto de un registro que es, a todas luces, más que irrazonable, ilegal. De esa forma, la última oración de la Sección 10 del Artículo II deja de tener el efecto que pretendieron darle sus creadores. Hasta hoy, la Sección 10 del Artículo II de la *475 Constitución de Puerto Rico ofrecía más; hoy ofrece menos.(33)
C. Nuestra Constitución no es una traducción al espa-ñol de la Constitución federal. Tiene vida propia, reconoce más derechos y ofrece mayores protecciones. Es desde esa óptica que debemos analizar la controversia ante nuestra consideración. Por lo tanto, me parece incorrecto recurrir únicamente a la doctrina federal para interpretar, no tan solo el mínimo, sino el máximo de nuestra propia protec-ción constitucional. (34) Este método adjudicativo fallido, no solo contradice nuestra larga tradición de reconocer en la Constitución de Puerto Rico garantías adicionales al mí-nimo requerido por la Constitución federal, sino que ignora y minimiza la discusión generada en nuestro propio espa- *476 ció interpretativo sobre el asunto en controversia.(35) En este sentido, llama la atención el poco interés que muestra la opinión de conformidad en el debate iniciado por las opi-niones concurrentes en Pueblo v. Rovira Ramos, supra. Aunque la opinión de conformidad se asemeja a la opinión concurrente del Juez Asociado Irizarry Yunqué, apenas la menciona. Tampoco profundiza en su inconformidad con los planteamientos del Juez Asociado Rebollo López.(36)
III
A pesar de mi fuerte discrepancia en cuanto al concepto de legitimación activa como requisito para presentar una moción de supresión de evidencia, entiendo que cumplo con mi función como miembro de un cuerpo colegiado al seña-larle a la opinión de conformidad que su análisis de la nor-mativa federal, que requiere una expectativa legítima de *477 intimidad sobre el lugar registrado para cuestionar un re-gistro, es incompleto a la luz de la propia doctrina federal. Como veremos, esta reconoce una expectativa de intimidad a personas naturales en lugares pertenecientes a personas jurídicas, rechazando así la legitimación activa exclusiva que aparenta emplear la opinión de conformidad y am-pliando las circunstancias en donde una persona natural puede poseer una expectativa de intimidad sobre propie-dad corporativa. Iniciamos nuestra discusión retomando el asunto de la protección contra registros y allanamientos irrazonables.
A. Para gozar de la protección constitucional contra registros y allanamientos irrazonables, la persona que la reclama tiene que albergar una expectativa razonable de intimidad sobre el lugar registrado.(37) Esta exigencia es igual tanto bajo la Constitución federal como bajo la Cons-titución de Puerto Rico.(38) Para determinar si se activa la protección de la Cuarta Enmienda, en la jurisdicción federal se utiliza un estándar de expectativa razonable de in-timidad considerablemente parecido al que se emplea para determinar si existe legitimación activa para solicitar la supresión de evidencia producto de un registro. Sin embargo, no son idénticos. Como nos explica LaFave en su obra Search and Seizures:
Yet, it is important to keep in mind that the question traditionally labeled as standing (did the police intrude upon this defendant’s justified expectation of privacy?) is not identical to, for example, the question of whether any Fourth Amendment search has occurred (did the police intrude upon anyone’s justified expectation of privacy?), and that therefore *478 the particular issues discussed herein are still rather discrete and deserving of separate attention, no matter what label is put on them. (Énfasis suplido y en el original.)(39)
Como veremos, el grado de protección ofrecido por esta expectativa razonable de intimidad es considerablemente mayor en la Constitución de Puerto Rico que en la Cuarta Enmienda de la Constitución federal. Incluso, en la propia jurisdicción federal el estándar de expectativa legítima de intimidad para determinar legitimación activa es menos ri-guroso al exigido para determinar si se activa la protección constitucional de la Cuarta Enmienda. Por eso, aunque se entienda que la exigencia de legitimación activa para pre-sentar una solicitud de supresión al amparo de la mencio-nada Regla 234 requiere demostrar mía expectativa razona-ble de intimidad, según propone la opinión de conformidad, la aplicación correcta de este criterio bajo normas federales exige un resultado distinto. Dado que, como hemos dicho, la Cuarta Enmienda de la Constitución federal recoge el mí-nimo de protección que ofrece la Sección 10 del Artículo II de la Constitución de Puerto Rico, veamos la jurisprudencia del Tribunal Supremo federal sobre este asunto.
En Katz v. United States, 389 U.S. 347 (1967), el Tribunal Supremo federal estableció el estándar vigente del al-cance de la protección constitucional al amparo de la Cuarta Enmienda. El Tribunal Supremo de Estados Uni-dos inició su análisis reconociendo que, si bien el pilar fundamental de la Cuarta Enmienda es la privacidad, la pro-tección constitucional no se limita únicamente a ésta: “That Amendment [Fourth] protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all.”(40) Esto, pues la Cuarta Enmienda protege *479 a las personas, no a los lugares.(41) De igual forma, aunque de manera más limitada que en Puerto Rico, esa En-mienda protege contra actuaciones arbitrarias del gobierno que no necesariamente están vinculadas a violaciones a la intimidad individual.
Comenzando con Katz, el Tribunal Supremo federal adoptó un estándar que establece dos criterios para deter-minar en qué circunstancias opera la protección ofrecida por la Cuarta Enmienda: primero, si la persona que re-clama dicha protección ha exhibido, por su conducta, una expectativa de intimidad; segundo, si la sociedad está dis-puesta a aceptar como razonable esa expectativa subjetiva de intimidad.(42) La jurisprudencia también ha establecido una serie de factores para ayudar en la determinación de si, en efecto, existe tal expectativa legítima de intimidad. Entre esos se encuentran:
(1) Si la persona que reclama la protección tenía derecho a excluir a los demás del lugar registrado.
(2) Si el lugar registrado es uno donde rma persona prudente y razonable puede estar exenta de intromisión gubernamental.
(3) Si la persona, aunque no esté en posesión o control del lugar registrado, tiene acceso legítimo a dicho lugar.
(4) Si la persona ha tomado algunas medidas o precauciones para mantener su privacidad en el lugar registrado.
(5) Si la persona razonablemente espera estar protegida en su intimidad en el lugar registrado.(43)
Ha sido este el estándar o test que se ha empleado con-sistentemente para determinar si una persona está prote-gida por la Cuarta Enmienda, particularmente en casos de registros sin una orden judicial. Esto es significativo, pues se trata de escenarios en donde no se requiere una orden *480 de registro dado que no hay intimidad que proteger y, por lo tanto, nunca se activa la protección de la Cuarta Enmienda.
En Smith v. Maryland se determinó que un registro de los números discados por una persona no requería una or-den judicial porque esa información no cae dentro de la expectativa razonable de intimidad que gozan los individuos. Esta decisión es compatible con la determina-ción en este caso en cuanto al registro de los números de las cuentas bancarias de los peticionarios. No obstante, el Tribunal Supremo federal manifestó que ello era distinto al contenido de dichas llamadas, con respecto a las cuales haría falta una orden judicial por haber una expectativa razonable de intimidad.(44)
El desarrollo jurisprudencial posterior a Katz amplió el estándar de titularidad que por muchos años determinaba si se activaban las protecciones de la Cuarta Enmienda. Este desarrollo no tuvo el efecto de eliminar el factor de titularidad, como aparenta plantear la opinión de confor-midad, sino que lo amplió para cubrir otras áreas no vin-culadas directamente a este asunto.(45) Es decir, no se re-currirá a un ejercicio mecánico de quién es el dueño del lugar registrado o los objetos allanados. Más bien, se apli-cará el estándar de expectativa legítima de intimidad uti-lizando los dos criterios mencionados: conducta subjetiva que genera una expectativa de intimidad y si la sociedad considera que esa expectativa es razonable.
Una corporación es un ser artificial, invisible e intangible que existe únicamente en la imaginación del derecho.(46) Producto de esa imaginación, el ordenamiento *481 le ha dado personalidad jurídica propia como ente indepen-diente a las personas naturales que fungen como sus accionistas y oficiales. (47) En la esfera federal, como perso-nas jurídicas, las corporaciones tienen derecho a que se les proteja contra registros y allanamientos irrazonables.(48) A igual conclusión hemos llegado bajo la Constitución de Puerto Rico. En RDT Const. Corp. v. Contralor I resolvi-mos que, a pesar de que en el caso de las corporaciones “la naturaleza de la expectativa de intimidad es menor que la que tienen las personas, no por ello están desprovistas de toda protección contra intervenciones irrazonables y arbi-trarias por parte del Estado”.(49) En particular, en ese caso llegamos a la conclusión de que una corporación tenía una expectativa razonable de intimidad sobre sus cuentas bancarias. Al así resolver, adoptamos de la jurisdicción federal la posición de que las corporaciones pueden gozar de urna expectativa razonable de intimidad como persona ju-rídica, aunque rechazamos la idea de que no existe, tanto para las personas naturales como para las jurídicas, una expectativa razonable de intimidad sobre las cuentas bancarias. Ahora bien, contrario a lo que afirma la opinión de conformidad, no argumentamos que las corporaciones tienen un derecho a la intimidad como si fuesen personas naturales, sino que están protegidas contra registros y allanamientos irrazonables.
En efecto, la jurisprudencia federal en cuanto a la ex-pectativa de intimidad de una corporación —o cualquier otra persona jurídica, por ejemplo, un sindicato— dispone una protección mayor contra registros irrazonables de lo que reconoce la opinión de conformidad. Cabe destacar que los casos federales han resuelto a favor de reconocerle le-gitimación activa a ciertos oficiales y directores de estas *482 personas jurídicas para retar registros ilegales hechos contra dichas entidades corporativas. Por eso, entiendo que, examinado el caso a la luz de esa normativa, el resultado debe ser distinto al que propone la opinión de con-formidad.
En Wilson v. United States, 221 U.S. 361 (1911), resuelto en 1911, el Tribunal Supremo de Estados Unidos se enfrentó a un requerimiento de documentos corporativos hecho al presidente de una corporación. Este alegó que dichos docu-mentos corporativos le incriminaban personalmente. El Tribunal Supremo federal resolvió que, a menos que el oficial corporativo demostrara la existencia de un privilegio personal, se debía llevar a cabo la producción de documentos(50) Esto es significativo, pues, aún a esa fecha, el Tribunal re-conoce escenarios en donde, en efecto, un oficial corporativo puede gozar de un derecho personal que le proteja contra este tipo de requerimientos. Desde Katz, dicho derecho puede existir si se logra demostrar una expectativa razona-ble de intimidad sobre el lugar registrado o los objetos incautados. Según el Tribunal Supremo federal, esto aplica-ría igual a si se tratase de documentos corporativos o perso-nales, pues en ambos casos —en el contexto de una recla-mación de autoincriminación— la producción tiende a incriminar(51) Además, en Wilson v. United States el Tribunal manifestó que, dado que la corporación solamente puede actuar a través de sus agentes, los tribunales operarán so-bre dichos agentes a través de la corporación(52) Esto con-trasta notablemente con la opinión de conformidad que lleva la ficción corporativa a tal extremo que concluye que los únicos accionistas y oficiales de la corporación no pueden reclamar los derechos de tal corporación para retar un re-gistro a todas luces ilegal, porque esta es una persona jurí-dica distinta que el Estado optó por no acusar.
*483 La opinión de conformidad despacha ligeramente las implicaciones del caso Mancusi v. DeForte, 392 U.S. 364 (1968). En este, el Tribunal Supremo federal se enfrentó a una controversia muy similar a la de autos. El Estado llevó a cabo un registro de la oficina del presidente de un sindicato.(53) Los documentos allanados, también, le perte-necían al sindicato. Producto de dicho registro y de la evi-dencia obtenida, se acusó al presidente como persona natural. Este cuestionó la validez del registro realizado. El Tribunal Supremo de Estados Unidos le reconoció legitima-ción activa para presentar dicho reto, a pesar de que la oficina y los documentos eran del sindicato, es decir, una persona jurídica separada.(54) En su análisis, el Tribunal Supremo federal hizo hincapié en que no se trataba de una reclamación a nombre de tercero, asunto que no fue ale-gado, sino de un análisis independiente de si el oficial sin-dical gozaba de una expectativa legítima de intimidad en el lugar registrado, a pesar de que, como hemos visto, tanto la oficina como los documentos le pertenecían a la persona jurídica llamada sindicato.(55) A pesar de que no era un espacio en donde el oficial efectuaba asuntos de corte personal, de que era un espacio compartido con otros oficiales, de que la titularidad de la oficina y de los documentos no era de este, el Tribunal Supremo federal le reconoció legi-timación activa para retar el registro. Es decir, más que una invocación de un derecho de tercero, se trata de anali-zar con detenimiento si los acusados gozan de su propia expectativa legítima de intimidad, la que no es exclusiva de la corporación afectada.
*484 Henzel v. U.S., 296 F.2d 650 (5to Cir. 1961), es otro caso citado por la opinión de conformidad que entiendo, respe-tuosamente, se aplica erróneamente. Este caso apoya la contención de los peticionarios. En Henzel, un oficial cor-porativo, blanco de una acusación, intentó retar el registro hecho en y contra propiedad corporativa. El Tribunal de Apelaciones federal le reconoció legitimación activa para retar dicho registro y expresó: “Nor does it make any difference that the property seized and the premises searched in this case were owned by a corporation rather than by an individual. ... [A]ppellant had an interest in the property seized and premises searched ....”(56) Es decir, no hay tal cosa como una única persona agraviada por un registro, quien, a su vez, es la única con legitimación activa para presentar una moción de supresión. De igual manera, en casos de registros a propiedades corporativas, no es conclu-sión automática que únicamente esa persona jurídica sea la que pueda incoar el reto al registro. Si otra persona, en este caso un oficial corporativo, logra demostrar su propia expectativa legítima de intimidad sobre esa propiedad cor-porativa, tendrá legitimación activa para presentar su mo-ción de supresión. Precisamente eso fue lo que ocurrió en Hanzel y en Mancusi. No se trata de una moción de supre-sión reclamando un derecho de tercero, sino de un reto propio basado en la existencia de otra persona agraviada por el registro por esta tener una expectativa legítima de intimidad sobre el lugar registrado o el objeto incautado, independientemente de la titularidad o de que le perte-nezca a la persona jurídica separada e independiente de la persona natural que es acusada.(57)
*485 Este razonamiento encuentra eco en el tratadista La-Fave quien hace una lectura similar de Mancusi. Nos ilus-tra LaFave:
Although the Court in Mancusi quite correctly pointed out that it is not essential to the establishment of standing that the defendant show “a property right in the invaded place”, it is fair to say that a defendant who does show such a right is most certain to be found to have standing.
[U]se need not inevitably be exclusive for there to be an expectation of privacy ... it still seems necessary to establish that the place searched was rather directly connected with the defendant’s responsibilities and activities. ...
Particularly in an otherwise close case, a court may be influenced by the defendant’s relationship to or interest in the particular item seized. ... (Escolios omitidos y énfasis suplido.)(58)
B. Continuando el análisis desde la perspectiva de la opinión de conformidad, tenemos que concluir que la juris-prudencia federal aplicable, sumada a nuestras propias protecciones constitucionales sobre intimidad, exigen que reconozcamos legitimación activa a los aquí peticionarios para retar el registro que se hizo contra las cuentas ban-carias de sus corporaciones. Una vez este Tribunal decide aplicar el estándar de expectativa legítima de intimidad para determinar si existe legitimación activa en una mo-ción de supresión, debemos analizar dicha expectativa a la luz del derecho a la intimidad provisto por la Constitución de Puerto Rico. Adoptar la doctrina federal de expectativa legítima de intimidad como estándar para determinar legi-timación activa según la Regla 234 de Procedimiento Criminal no conlleva adoptar la definición federal de la inti-midad y su alcance y tampoco la menor intensidad de la protección constitucional federal.(59)
*486 A diferencia de la jurisdicción federal, el derecho a la intimidad en Puerto Rico está recogido expresamente en nuestra Constitución. (60) Hemos resuelto que nuestro aná-lisis sobre la protección contra registros y allanamientos irrazonables tendrá como uno de sus puntos de partida el derecho a la intimidad.(61) Como consecuencia, por “tener apoyo en este derecho preeminente, hemos interpretado las garantías contra registros y allanamientos de forma más amplia que la jurisprudencia constitucional norteamericana”.(62) Por lo tanto, tomando los factores uti-lizados por la jurisprudencia federal como un mínimo, he-mos identificado una serie de criterios adicionales para de-terminar la existencia de una expectativa legítima de intimidad en cuanto a un registro o allanamiento, ninguno de los cuales es determinante por sí solo. Estos factores son:
(1) El lugar registrado o allanado.
(2) La naturaleza y grado de intrusión de la intervención policíaca.
(3) El objetivo o propósito de la intervención.
(4) Si la conducta de la persona era indicativa de una expec-tativa subjetiva de intimidad.
(5) La existencia de barreras físicas que restrinjan la en-trada o la visibilidad al lugar registrado.
(6) La cantidad de personas que tienen acceso legítimo al lugar registrado.
(7) Las inhibiciones sociales relacionadas con el lugar registrado. (Énfasis suplido.)(63)
*487 En Pueblo v. Ramos Santos, resolvimos que un invitado de la dueña de una casa tenía una expectativa de intimi-dad suficiente como para activar la protección constitucio-nal contra registros y allanamientos irrazonables.(64) En Pueblo v. Santiago Feliciano, analizamos con detenimiento la relación entre el derecho de intimidad y la protección contra registros y allanamientos irrazonables.(65) En dicho caso manifestamos que el “derecho a la intimidad puede ser invocado únicamente por aquella persona que, dentro de las circunstancias particulares del caso, tenga una ex-pectativa real de que su intimidad se respeta y que la so-ciedad esté dispuesta a reconocer esa expectativa ...”. (Én-fasis suprimido.)(66) De lo contrario, no se “puede reclamar la protección del derecho de intimidad”.(67)
El ejemplo más claro de cómo, amparándonos en que nuestra Constitución ofrece una protección mayor en el área de la intimidad que su contraparte federal, hemos diferido de la jurisprudencia federal sobre el grado de pro-tección que se goza como parte de una expectativa legítima de intimidad es, precisamente, la aplicación de esta figura a las cuentas bancarias.
En la jurisdicción federal no hay una expectativa razo-nable de intimidad en cuanto a las cuentas bancarias, ya sean personales o corporativas.(68) Muchas jurisdicciones estatales rechazaron esta interpretación estrecha de lo que constituye una expectativa legítima de intimidad que ha sido severamente criticada por los tratadistas.(69) En RDT Const. Corp. v. Contralor I, supra, también rechazamos esa *488 visión estrecha y resolvimos que, en Puerto Rico, una persona tiene una expectativa legítima de intimidad sobre sus cuentas bancarias. Por lo tanto, cualquier análisis sobre legitimación activa que se fundamente sobre la figura de expectativa legítima de intimidad debe incluir, a diferencia de la jurisprudencia federal al respecto, que tal expectativa existe con relación a una cuenta bancaria.
Incluso, más de tres décadas después de Miller, la doc-trina norteamericana ha ido reconociendo las deficiencias de esa decisión y se ha encaminado por sendas de mayor protección en cuanto a lo que conlleva una expectativa ra-zonable de intimidad. Recientemente, el Tribunal de Ape-laciones federal para el Sexto Circuito determinó que existe una expectativa legítima de intimidad en los correos electrónicos almacenados por los proveedores de dichos servicios.(70) Se trata de un reconocimiento de que este tipo de transacción es “prácticamente una necesidad ... para participar adecuadamente en la vida económica”.(71) El tra-tadista LaFave nos explica que, para indagar en cómo se analiza la existencia de una expectativa razonable de inti-midad como parte del mínimo constitucionalmente prote-gido, se debe tener en mente que se trata, más que del resultado de un derecho titular, de la existencia de un in-terés de la persona que lo reclama en el lugar registrado o el objeto incautado.(72) En cuanto a su aplicación para de-terminar la legitimidad del reclamante, nos refiere al cri-terio elaborado en Mancusi v. DeForte, supra, “whether the conduct which the defendant wants to put in issue involved an intrusion into his reasonable expectation of privacy”. (Enfasis en el original.)(73)
*489 Me parece innegable que el caso RDT Const. Corp. v. Contralor I es el determinante en la controversia de autos.(74) Allí, partiendo de la premisa de que puede existir una expectativa legítima de intimidad sobre las cuentas bancarias, resolvimos que, para determinar si esta, en efecto, existe, no debemos auscultar la titularidad de las cuentas. (75) En RDT Const. Corp. v. Contralor I no tuvimos necesidad de ir más allá de la expectativa de cada acusado sobre su propia cuenta bancaria, ante el hecho de que en ese momento se acusó tanto a las personas naturales como a la persona jurídica. Por lo tanto, cada una de ellas pudo retar exitosamente los registros a sus respectivas cuentas bancarias. No obstante, el factor determinante en aquel momento no fue que cada acusado era titular de su propia cuenta: “El criterio decisivo para determinar si se trata de una información protegida constitucionalmente es la ex-pectativa razonable de intimidad de los depositantes”. (Én-fasis suplido.)(76) Es decir, incluso aplicando el criterio adoptado por la Opinión de conformidad, el factor decisivo no es quién es dueño de las cuentas; lo que corresponde analizar es si los peticionarios cuentan con una expectativa razonable de intimidad sobre la información en las cuentas bancarias de sus corporaciones.(77) Una correcta aplicación de RDT Const. Corp. v. Contralor I, de Mancusi y de Han-zel nos dice que sí.
*490 IV
No hay duda de que los peticionarios albergan una ex-pectativa razonable de intimidad sobre sús cuentas banca-rias personales. Eso fue resuelto por RDT Const. Corp. v. Contralor I y la determinación del Tribunal de Primera Instancia a esos efectos advino final y firme. De igual ma-nera, no hay duda de que la persona jurídica llamada cor-poración alberga una expectativa razonable de intimidad sobre sus propias cuentas. Eso también fue resuelto por RDT Const. Corp. v. Contralor I. Este asunto no está ante nuestra consideración, pues el Estado optó por no acusar a la persona jurídica. La interrogante es: ¿tienen los peticio-narios una expectativa razonable de intimidad sobre las cuentas bancarias de sus corporaciones? La prueba nos obliga a contestar en la afirmativa, si empleamos los crite-rios identificados por nuestro ordenamiento como indicati-vos de la existencia de una expectativa legítima de intimidad.(78)
Primeramente, el lugar registrado es una cuenta banca-ria y hemos resuelto que los depositantes tienen sobre esas cuentas una expectativa razonable de intimidad.(79) En se-gundo lugar, la naturaleza y grado de intrusión de la inter-vención gubernamental en este caso es total. En tercer lu-gar, el objetivo y propósito de la intervención denota la existencia de una expectativa de privacidad en tanto el Es-tado registró la cuenta bancaria corporativa como parte de una investigación contra los peticionarios. En cuarto lugar, por su propia característica incorpórea y por la naturaleza de las transacciones bancarias en nuestro país, es evidente la existencia de barreras que restringen el acceso al lugar registrado. En quinto lugar, no dudamos, como resolvimos *491 en RDT Const. Corp. v. Contralor I, que hay un reconoci-miento social de una expectativa de intimidad en las tran-sacciones bancarias, independientemente de la titularidad de la cuenta involucrada.
Por otra parte, los peticionarios eran las únicas perso-nas naturales que tenían acceso a dichas cuentas corpora-tivas, pues eran los únicos oficiales de la corporación. Si bien entiendo que esto no conlleva que la corporación sea un alter ego de los peticionarios ni que se deba descorrer el velo corporativo, sí es revelador a la luz del criterio de “la cantidad de personas que tienen acceso legítimo al lugar registrado” como uno de los factores que se consideran para determinar la existencia de una expectativa legítima de intimidad. Nadie que no fuese los peticionarios tenía ac-ceso a las cuentas registradas.
Finalmente, analizamos el criterio de si la conducta de los peticionarios era indicativa de una expectativa subje-tiva de intimidad. La declaración jurada de la propia inves-tigadora del Departamento de Hacienda, la señora Már-quez Vázquez, demuestra que, efectivamente, los peticionarios exhibieron una conducta indicativa de tal expectativa. Según su investigación, la cuenta bancaria corporativa se nutrió de la línea de crédito personal del señor Costas Elena con una aportación de $13,000 que luego fueron devueltos.(80) También surge que se deposita-ron fondos en la cuenta personal de los peticionarios pro-venientes de las cuentas corporativas.(81) La señora Már-quez Vázquez también relata que hubo “desembolsos realizados de las cuentas bancarias de las corporaciones, por concepto de pagos de taijetas de créditos perteneciente al [señor] Costas Elena y su esposa Hazel Russel, pagos por concepto de matrícula de sus hijos a universidades en *492 Estados Unidos y pagos hechos al [señor] Costas Elena”(82) Además, hubo “pagos a suplidores tales como Paradise Pools por la cantidad de $25,800 con relación a cierta pis-cina, y un pago a Marble & Stone por la cantidad de $10,000 por el ‘cambio de pisos’ ”.(83) Estas transacciones fueron parte de una costumbre marcada de los peticiona-rios de confundir sus cuentas y pagos personales con las cuentas corporativas. Según la investigadora del Departa-mento de Hacienda:
[S]e podía apreciar en algunos casos una inconsistencia en cuanto al nombre de la entidad a favor de quien se emitían los pagos y la cuenta en la que finalmente eran depositadas. Es decir, se podía apreciar que pagos hechos a favor del [señor] Luis Costas Elena eran depositados en algunas cuentas de las corporaciones y viceversa, pagos hechos a nombre de las cor-poraciones eran depositados en la cuenta bancaria del [señor] Luis Costas Elena o en las cuentas de las otras corpora-ciones(84)
De lo anterior se deduce que los peticionarios deposita-ban fondos personales en la cuenta corporativa y que de esta cuenta se desembolsaban pagos para gastos persona-les de ellos. Solamente los peticionarios tenían acceso a dichas cuentas. La única conclusión razonable de los he-chos de este caso es que los peticionarios gozaban de una expectativa legítima de intimidad sobre las cuentas corpo-rativas suficiente para presentar una moción de supresión al amparo de la Regla 234 de Procedimiento Criminal(85) Sin lugar a dudas, éstos fueron “personas agraviadas” por el registro ilegal llevado a cabo por el Estado.
*493 V
Como punto final, me preocupa seriamente que con esta Sentencia el Tribunal le esté dando un perfecto subterfugio al Estado para llevar a cabo registros ilegales sin que se pueda solicitar la supresión de la evidencia así obtenida, permitiendo de esa forma que el Estado burle las protec-ciones constitucionales del pueblo y se beneficie de sus ac-tos ilícitos. Consistentemente hemos rechazado el uso de subterfugios para que el Estado se beneficie de sus propios actos ilegales, particularmente en cuanto a evidencia obte-nida tras registros ilícitos. En Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, permitimos el uso de evidencia ile-galmente obtenida en un pleito civil, precisamente porque el Estado no era parte en ese pleito civil. En dicho caso, el elemento decisivo fue “si el Gobierno es o no una parte en el caso, o de alguna manera se beneficia en la admisión de la evidencia ilegalmente obtenida”.(86) Sobre la relación en-tre la regla de exclusión constitucional y las actuaciones gubernamentales, manifestamos lo siguiente:
Según señaláramos, su propósito es disuadir toda conducta de los agentes del Gobierno que infrinjan la Constitución o la ley. La solución adoptada por nuestra Constitución para pre-venir dicha conducta es la más drástica: inadmisibilidad. Ello responde a la visión de que en la relación gobierno-ciudadano, los intereses y objetivos sociales implicados justifican la adop-ción de un remedio tan extraordinario en todo caso en que el Gobierno pretenda utilizar dicha evidencia contra quien se le han violado sus derechos constitucionales. (Énfasis en el original.)(87)
En Pueblo v. Valenzuela declaramos que uno de los pro-pósitos fundamentales de la protección constitucional de la Sección 10 del Artículo II es, precisamente, “no permitir *494 que el Gobierno se beneficie de sus actos ilícitos”. (Énfasis suplido. )(88)
Si el Estado registra las cuentas de una corporación de forma ilegal para encausar a sus oficiales como personas naturales, y no acusa a la corporación como persona jurí-dica, este puede, impunemente, aprovecharse de la eviden-cia así obtenida. No podemos olvidar que, al fin y al cabo, las corporaciones son entes incorpóreos. No acusar a la cor-poración como persona jurídica pero sí acusar a sus únicos accionistas y oficiales en su carácter personal puede cons-tituir una tentación para, como en el caso de autos, pres-cindir de la acusación contra la ficción jurídica para poder aprovecharse de un registro ilegal. Esto es intolerable en nuestro ordenamiento democrático.
Permitir este tipo de mecanismo tan fácilmente evasivo de las protecciones constitucionales es sinónimo de elimi-nar la protección. Cada vez que el Estado quiera acusar a los accionistas u oficiales de una persona jurídica, puede ilegalmente registrar las cuentas bancarias de la corpora-ción y beneficiarse de dicha conducta si simplemente opta por no acusar a la persona jurídica, la que evidentemente no puede ser privada de su libertad por su forma incorpó-rea, e ir directamente contra sus oficiales en su carácter personal. Hacer eso permite al gobierno reducir la protec-ción constitucional a meras palabras.(89) El gobierno es el primero que debe respetar nuestro ordenamiento constitu-cional y no debe permitirse que esquive las protecciones constitucionales aprovechándose de la ficción jurídica *495 corporativa.(90) Hoy, desafortunadamente, el Tribunal ben-dice tal conducta. No podemos estar de acuerdo.
Por los fundamentos anteriormente expuestos, disiento.

 3 Diario de sesiones de la Convención Constituyente 1566 (1961).

 Este asunto se atenderá con más detenimiento posteriormente al analizar si los peticionarios contaban con una expectativa razonable de intimidad sobre las cuentas bancarias de la corporación según la normativa que adopta la opinión de conformidad. Esta información surge de la declaración jurada de la CPA Lydia E. Márquez Vázquez, quien fue la persona contratada por el Departamento de Hacienda para dirigir la investigación contra el señor Costas Elena y la señora Russell McMillan. Como parte de esa investigación, la señora Márquez Vázquez analizó las actividades de las cuentas bancarias personales y corporativas de los peticionarios.

 Los cargos consistían en evasión contributiva y brindar información falsa. En particular, se presentaron acusaciones por cuatro violaciones a la Sección 6050 del Código de Rentas Internas de Puerto Rico, 13 L.P.R.A. see. 8055, y por cuatro viola-ciones al Artículo 6054(c)(1) del Código de Rentas Internas de Puerto Rico, 13 L.P.R.A. sec. 8059(c)(1).

 34 L.P.R.A. Ap. II, R. 234. Originalmente, la moción de supresión se basó en que los registros no fueron notificados a los peticionarios y no fueron autorizados por orden judicial. Tras ser informados de la existencia de una orden judicial que auto-rizaba los registros, los peticionarios presentaron una al amparo de la Regla 234.

 Los peticionarios operaban varias entidades corporativas: Diógenes International Consulting, Demeter International y PR Agro-Térra International. Los peti-cionarios alegan que se trata de corporaciones íntimas. Según las determinaciones del foro de instancia, que no tenemos base para descartar, estas corporaciones no cumplieron con las exigencias legales para ser consideradas como corporaciones íntimas. No obstante, no hay controversia en que los únicos accionistas y oficiales de estas corporaciones eran los peticionarios, y que el quehacer diario de las corpora-ciones estaba íntimamente ligado a ellos.

 Los peticionarios también cuestionaron el requerimiento de información que hiciera el Departamento de Hacienda contra el B.B.V.A. y otros sobre los números de las respectivas cuentas bancarias. Además, impugnaron el testimonio de la CPA Lydia E. Márquez Vázquez dado que esta, por ser contratista del Departamento de Hacienda pero no empleada de este, no estaba autorizada a llevar a cabo la investi-gación que eventualmente resultaría en sus acusaciones. El primer asunto —el re-querimiento del número de las cuentas bancarias— no ha sido cuestionado ante este Tribunal. En cuanto al segundo asunto, estamos de acuerdo con el razonamiento de la opinión de conformidad.

 Emda. IV, Const. EE.UU. Traducción hecha por el Prof. Ernesto L. Chiesa Aponte en Derecho Procesal Penal: Etapa Investigativa, San Juan, Pubs. J.T.S., 2006, pág. 98.

 Art. II, Sec. 10, Const. E.L.A., L P.R.A., Tomo 1, ed. 2008, págs. 326-327.

 Pueblo v. Rivera Colón, 128 D.P.R. 672, 680 (1991); E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 205 (1984).

 Pueblo v. Dolce, 105 D.P.R. 422, 426-427 (1976). Véase, además, Chiesa Aponte, op. cit., pág. 98.

u) Pueblo v. Rivera Colón, supra, pág. 680; Pueblo v. Málavé González, 120 D.P.R. 470, 475 (1988).

 Pueblo v. Dolce, supra, pág. 429.

 Chiesa Aponte, op. cit., pág. 99.

 íd., pág. 111.

 O.E. Resumil, Práctica jurídica de Puerto Rico: derecho procesal penal, Equity, Orford, 1990, T. I, Sec. 12.1, pág. 304.

 íd.

 “La protección que emana del antes citado precepto constitucional [Sección 10, Artículo II] consigna tres propósitos fundamentales, a saber: disuadir y desalen-tar a los funcionarios del orden público de incurrir en conducta violatoria de la protección constitucional; la integridad judicial al evitar la complicidad de los tribu-nales con respecto a actos de desobediencia a la Constitución e impedir la admisión de evidencia ilegalmente obtenida, y no permitir que el Gobierno se beneficie de sus actos ilícitos ...” (Énfasis suplido.) Pueblo v. Valenzuela Morel, 158 D.P.R. 526, 539 (2003).

 Pueblo v. Dolce, supra, pág. 426.

 Id. En dicho caso, por voz del Juez Presidente Trías Monge, dijimos lo si-guiente: “En United States v. Robinson, 414 U.S. 218 (1973) y Gustafson v. Florida, 414 U.S. 260 (1973), por ejemplo ..., el Tribunal Supremo de los Estados Unidos redujo considerablemente la protección del ciudadano en el caso de registros de la persona incidentales a un arresto legal. La reacción de varios estados ha sido nega-tiva, rehusando adoptar estos fallos en la interpretación de sus propias constituciones.” Id., pág. 427.

 Resumil, op. cit., Sec. 12.2, pág. 305.

 El resto de la Regla 234 dispone así:
*470 “En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la misma. El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista. La moción se notificará al fiscal y se presentará cinco (5) días antes del juicio a menos que se demostrare la existencia de justa causa para no haberla presentado dentro de dicho término o que al acusado no le constaren los fundamentos para la supresión, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal.” 34 L.P.R.A. Ap. II.

 Resumil, op. cit, Sec. 12.8, pág. 314.

 El profesor Chiesa Aponte hace referencia a la “persona [que] ha sufrido la violación constitucional”. Chiesa Aponte, op. cit, pág. 114.

 Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 D.P.R. 352, 369 (1992), opinión disidente del Juez Asociado Rebollo López. “El mandato en la citada Sec. 10 de nuestra Carta de Derechos no puede ser más claro: decretado, por un tribunal competente, que una evidencia ha sido obtenida en violación de sus disposiciones, dicha evidencia es inadmisible en nuestro País.” (Enfasis en el original.)

 Resumil, op. cit, Sec. 12.9, pág. 315.

 Chiesa Aponte, op. cit., pág. 117.

 Ya antes este Tribunal había atendido el asunto de legitimación activa o standing para presentar una moción de supresión de evidencia. En Pueblo v. Roldán, 42 D.P.R. 956 (1931), Pueblo v. Acevedo, 59 D.P.R. 114 (1941), y Pueblo v. Monzón, 72 D.P.R. 72 (1951), habíamos rechazado el derecho automático a legitimación activa. No obstante, como puede observarse de las fechas de estos casos, se trata de expre-siones vertidas antes de aprobarse la Constitución de Puerto Rico en 1962. Es decir, fueron revocadas por la Convención Constituyente al aprobar la última oración de la Sección 10 del Artículo II. En Pueblo v. Vargas Delgado, 105 D.P.R. 335, 339 (1976), hicimos mención de los conceptos de “capacidad jurídica e interés legítimo”, pero no los discutimos.

 La otra opinión concurrente fue emitida por el Juez Asociado Irizarry Yun-qué, a quien se unieron los Jueces Asociados Negrón García y Ortiz. En ésta, entre otros asuntos, se acogió el razonamiento de Rawlings v. Kentucky, 448 U.S. 98 (1980), y Rakas v. Illinois, 439 U.S. 128 (1978), sobre la necesidad de que la persona imputada tenga una expectativa legítima de intimidad sobre el lugar registrado “[p]ara determinar que un agente ha llevado a cabo un registro ilegal ...”. Pueblo v. Rovira Ramos, supra, pág. 952. Por entender que el acusado no tenía una expecta-tiva legítima de intimidad en una armería donde llevaba su arma de fuego a arre-glar, la opinión concurrente manifestó que no hubo registro ilegal. Es notable que el uso de la figura de la expectativa legítima de intimidad se utilizó más para determi-nar si existía una protección contra registros y allanamientos irrazonables que desde la óptica de si existía legitimación activa para impugnar el registro.

 Pueblo v. Rovira Ramos, supra, págs. 955-956.

 íd., págs. 956-957.

 Expresiones del delegado Antonio Reyes Delgado, 3 Diario de Sesiones de la Convención Constituyente 1566 (1961). Tras su intervención, otros delegados se hi-cieron eco de sus palabras y se derrotó la enmienda.

 Informe de la Comisión de Carta de Derechos, 4 Diario de Sesiones de la Convención Constituyente 2568 (1961).

 gn gu 0pinión concurrente en nuestra Sentencia en Pueblo v. Martínez Martí, 115 D.P.R. 832 (1984), el Juez Asociado Rebollo López nos hace la advertencia siguiente: “Lo que s[í] posiblemente impresiona e impacta de la decisión emitida en el caso de Illinois v. Gates, ante, es que dicha decisión es un eslabón más en la reciente tendencia o Viraje’ de parte del Tribunal Supremo de Estados Unidos hacia lo que podríamos catalogar de una interpretación más ‘restrictiva’ de los‘derechos’ de los ciudadanos de ese país ‘garantizados’ bajo la Cuarta Enmienda íd., pág. 857.
Nuestras expresiones sobre los límites de la regla de exclusión constitucional demuestran lo cautelosos que hemos sido en cuanto a no achicar el grado de protec-ción que dicha regla genera. En EL.A. v. Coca Cola Bott. Co., supra, resolvimos que la Sección 10, Artículo II, cobija a investigaciones administrativas y, además, protege a establecimientos comerciales. En Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, un Tribunal fuertemente dividido resolvió que la Sección 10, Artículo II no conllevaba la exclusión de evidencia ilegalmente obtenida en casos civiles si el go-bierno no era parte en dicho pleito y no se beneficiaba de alguna manera con la admisión de la evidencia ilegalmente obtenida. No obstante la estrechez de esta excepción a la regla de exclusión constitucional, tres integrantes de esta Curia disin-tieron por entender que dicha regla es de carácter absoluto. En su opinión disidente; nuevamente el Juez Asociado Rebollo López nos hace una importante advertencia: “[E]l Tribunal en el presente caso incurre en el error de resolver este tipo de situa-ción a base de la doctrina prevaleciente en la esfera federal, la cual es una no sólo mucho más restrictiva y conservadora que la norma imperante en nuestra jurisdic-ción, sino que, naturalmente, una basada en las disposiciones específicas de la citada Cuarta Enmienda de la Constitución federal.” íd., pág. 367. Concluye el Juez Rebollo López: “En el presente caso, llana y sencillamente, nos enfrentamos a un lenguaje expreso y específico de nuestra Constitución, el cual venimos en la obligación a aca-tar y poner en vigor en nuestra jurisdicción.” (Énfasis suprimido.) íd., pág. 368.

 Me parece preocupante y totalmente incorrecto, además, el uso de fallos de tribunales federales de distrito para, primero, afirmar cuál es la doctrina federal prevaleciente y, segundo, para interpretar los límites de nuestra propia Constitución.

 Véase el artículo del entonces Juez Asociado del Tribunal Supremo de Es-tados Unidos, William J. Brennan, Jr., sobre la importancia de que se desarrolle un derecho constitucional estatal que ofrezca mayores libertades a los ciudadanos y ciudadanas. W.J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L. Rev. 489 (1977). Incluso, hace un llamado a que se interpreten cláusulas idénticas en las constituciones estatales y la federal de manera distinta. En este caso, estamos ante una cláusula expresamente diferente a la disposición constitucional federal. No obstante, la opinión de conformidad opta por darle una interpretación idéntica.

 De esa forma, se empobrece, no sólo la vitalidad de nuestra Constitución y su promesa de ampliar las protecciones mínimas contenidas en la Constitución federal, sino nuestra metodología interpretativa y de adjudicación. Debo señalar que nunca hemos retomado ese debate, a pesar de varias oportunidades para hacerlo. Sobre esto, el profesor Chiesa Aponte comenta lo siguiente: “Con esta división de tres a tres en el Tribunal Supremo respecto a la exigencia de ‘standing’ para que un acusado pudiera presentar una moción de supresión al amparo de la Regla 234 de Procedimiento Criminal, era de esperarse una gran discusión en el próximo caso sobre este asunto. Pero no ocurrió así.” Chiesa Aponte, op. cit., pág. 119. Con la presente Sentencia, sigue vigente, pues, otro comentario del distinguido tratadista, en el sentido de que, en Puerto Rico, “la exigencia de legitimación activa para soli-citar la supresión de evidencia obtenida mediante un registro ilegal, ha tenido un desarrollo algo curioso”. íd., pág. 117. Si bien es cierto, como señala la opinión de conformidad, que en casos posteriores a Pueblo v. Rovira Ramos, supra, hemos em-pleado la figura de la legitimación activa basada en una expectativa razonable de intimidad para atender argumentos sobre supresión de evidencia, es igualmente cierto que lo hemos hecho sin profundizar en dicha figura y sin retomar el debate que dejamos pendiente en ese caso. Hoy, en vez de reabrir el debate, lo damos por cerrado sin mayor discusión.

 Pueblo v. Vargas Delgado, supra, pág. 338; Chiesa Aponte, op. cit., pág. 108.

 En cuanto al uso del estándar de expectativa legítima de intimidad para evaluar la validez de un registro al amparo de la Sección 10 del Artículo II de la Constitución de Puerto Rico, en Pueblo v. Rivera Colón, supra, pág. 686, acogimos lo resuelto en Katz v. United States, infra. Sin embargo, aunque acogimos el estándar de expectativa legítima de intimidad, no adoptamos la definición de expectativa le-gítima de intimidad de la jurisdicción federal e hicimos hincapié en que el derecho de intimidad en Puerto Rico es de mayor envergadura.

 6 LaFave, Search and Seizure, Sec. 11.3, pág. 131 (2004).

 Katz v. United States, supra, pág. 350.

 Id. De esta forma se abandonó el criterio anterior que enlazaba la protección constitucional a la existencia de un “trespass”. Véase Chiesa Aponte, op. cit., págs. 102-103, y los casos allí citados.

 Katz v. United States, supra, pág. 361; Smith v. Maryland, 442 U.S. 735, 740 (1979); Rakas v. Illinois, supra, pág. 143. Véase, además, Chiesa Aponte, op. cit., pág. 104.

 Resumil, op. cit., Sec. 12.9, págs. 315-316.

 íd., págs. 742-743.

 Véase United States v. Salvucci, 448 U.S. 83, 91 (1980): “While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated ... property rights are neither the beginning nor the end of this Court’s inquiry.” (Cita omitida.) Véanse, además: Rawlings v. Kentucky, supra; Resumil de Sanfilippo, op. cit., Sec. 12.9, pág. 315.

 Trustees ofDarmouth College v. Woodward, 17 (4 Wheat.) 518 (1819).

 Arts. 27 a 31 del Código Civil, 31 L.P.R.A. secs. 101-105; Arts. 1.05 y 2.02 de la Ley General de Corporaciones, Ley Núm. 164 de 16 de diciembre de 2009 (14 L.P.R.A. sees. 3505 y 3522).

 Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 392 (1920).

 RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 442 (1996).

 Wilson v. United States, 221 U.S. 361, 376 (1911).

 íd., págs. 378-379.

 íd., pág. 377.

 jsT0 hubo controversia alguna respecto al hecho de que la titularidad de la oficina le pertenecía al sindicato como persona jurídica y que no se trataba de una oficina destinada para el uso personal, e incluso exclusivo, del presidente.

 Es decir, contrario a lo expresado por la opinión de conformidad, es posible que, además de la persona jurídica titular del lugar registrado, otra persona natural también tenga una expectativa razonable de intimidad. Que la persona jurídica tenga esa expectativa, y por lo tanto legitimación, no excluye que otros puedan te-nerla también.

 Mancusi v. DeForte, supra, págs. 366 y 368.

 íd., págs. 652-653.

 Como regla general, en la jurisdicción federal no se permite reclamar vica-riamente derechos personales como la protección de la Cuarta Enmienda. Rakas v. Illinios, supra, págs. 133-134. Véase, además, LaFave, op. cit, págs. 126-127. Sobre la legitimación activa de los oficiales corporativos, esta tiene límites. “This is not to say that every employee of a corporation can attack the illegal seizure of corporate property if the fruits of the search are proposed to be used against him. Each case must be decided on its own facts.” Henzel v. U.S., supra, pág. 653.

 LaFave, op. cit, Sec. 11.3(d), págs. 180 y 182-184.

 La opinión de conformidad reconoce que este es el estado de Derecho actual en Puerto Rico, en cuanto le otorga legitimación activa a la corporación sobre sus *486 propias cuentas bancarias, no obstante el fallo del Tribunal Supremo federal en United States v. Miller, infra. Si se hubiese adoptado totalmente la normativa federal en cuanto a la expectativa legítima de intimidad, tendríamos que resolver que no hay una expectativa legítima de intimidad sobre cuentas bancarias.

 Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1.

 RDT Const. Corp. v. Contralor I, supra, pág. 441. “[C]uando en Puerto Rico una parte sostiene que tiene una expectativa razonable de intimidad, su reclamo está amparado en que nuestra Constitución ‘goza de una vitalidad independiente de la Constitución de los Estados Unidos’, y en el área del derecho a la intimidad nues-tra Carta de Derechos es de ‘factura más ancha’ que su homologa federal.”

 Pueblo v. Rivera Colón, supra, pág. 681.

 íd., págs. 684-685.

 Pueblo v. Ramos Santos, 132 D.P.R. 363, 374 (1992).

 Pueblo v. Santiago Feliciano, 139 D.P.R. 361 (1995).

 íd., pág. 384.

 íd., pág. 385.

 United States v. Miller, 425 U.S. 435 (1976).

 Brennan, supra, pág. 497; LaFave, op. cit., pág. 190. Véase, además, RDT Const. Corp. v. Contralor I, supra.

 U.S. v. Warshak, Nos. 08-3997/4085/4087/4212/4429; 09-3176 (2010), United States Court of Appeals for the Sixth Circuit.

 RDT Const. Corp. v. Contralor I, supra, pág. 441.

 LaFave, op. cit., pág. 128.

 id.

 De igual forma, estimo que se llegaría a la misma conclusión de una lectura de Mancusi y de Hanzel.

6) Por un lado, la opinión de conformidad insiste en que la titularidad no es el factor determinante para reconocer legitimación activa para retar un registro. Sin embargo, llega a la conclusión de que la corporación es la única que puede retar el mismo, excluyendo a los demás, porque es, precisamente, la titular de las cuentas. No discute si, además de la corporación, los peticionarios tienen su propia expectativa de intimidad sobre cuentas que incluían fondos personales de ellos.

 RDT Cont. Corp. v. Contralor I, supra, pág. 442.

 Como hemos visto, ya la jurisdicción federal abandonó el estándar estrecho de titularidad para conferir legitimación activa y lo ha reemplazado por uno más amplio: la expectativa legítima de intimidad.

 Pueblo v. Rivera Colón, supra, pág. 684. A igual conclusión se llegaría in-cluso si se emplea la definición de expectativa legítima de intimidad que adopta la opinión de conformidad.

 RDT Const. Corp. v. Contralor I, supra.

 Declaración Jurada de la CPA Lydia E. Márquez Vázquez de 15 de diciem-bre de 2004, pág. 3, Apéndice de la Petición de certiorari, pág. 324.

 Id., pág. 4, Apéndice, pág. 325.

 íd.

 íd., pág. 10, Apéndice, pág. 331.

 íd.

 La opinión de conformidad no explica por qué si los peticionarios deposita-ban fondos personales en las cuentas corporativas y usaban dicha cuenta para hacer pagos igualmente personales, ello no crea una expectativa razonable de intimidad a favor de estos.

 Toll y Sucn. Rivera Rojas v. Adorno, supra, pág. 360.

 íd., pág. 362.

 Pueblo v. Valenzuela Morel, supra, pág. 539.

 Silverthorne Lumber Co. v. United States, supra, pág. 392. “[That the government may benefit] reduces the Fourth Amendment to a form of words”. Véase, además, Go-Bart Importing Co. v. United States, 282 U.S. 344, 357 (1931): “The Amendment is to be liberally construed and all owe a duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.” Por su parte, LaFave nos advierte en cuanto a este tipo de mecanismo: “More troublesome is the status of a person, charged as an individual, vis-á-vis a search of his place of business when that business is being operated as a corporation.” LaFave, op. cit., Sec. 11.3(d), pág. 180.

 Igual advertencia ha hecho el Tribunal Supremo de Estados Unidos: “No court should condone the unconstitutional ... behavior of those who planned and executed [the illegal search]”. United States v. Payner, 447 U.S. 727, 733 (1980). En este caso, una agencia gubernamental se valió de un tercero privado para apropiarse de un maletín propiedad de otra persona. La persona que atacó dicho registro no prosperó, sin embargo, porque no logró establecer una expectativa razonable de in-timidad sobre el maletín que le pertenecía a un tercero y cuya evidencia obtenida le incriminaba. Por lo tanto, no había violación a la Cuarta Enmienda. No obstante, el Tribunal Supremo federal fustigó la estrategia empleada por el gobierno.